IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LINDA S. VANDENBURGH**, | |
| Plaintiff, | Case No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| **BANNOCKBURN POLICE OFFICER ROBERT OGDEN; HIGHLAND PARK POLICE OFFICER GERALD CAMERON; HIGHLAND PARK POLICE OFFICER PHILIP DELAURENTIS; HIGHLAND PARK POLICE OFFICER AMY HYNDMAN; DEERFIELD POLICE OFFICER JOHN DOE #1; HIGHLAND PARK POLICE OFFICER JOHN DOE #2; RAVINIA FESTIVAL ASSOCIATION,** an Illinois not-for-profit organization; **THE CITY OF HIGHLAND PARK**, a Municipal Corporation; **THE VILLAGE OF BANNOCKBURN,** a Municipal Corporation; and **THE VILLAGE OF DEERFIELD**, a Municipal Corporation., | |
| Defendants. | |

**COMPLAINT**

Plaintiff, LINDA S. VANDENBURGH ("Mrs. VanDenburgh"), by and through her undersigned counsel, states as follows as her Complaint against Defendants, BANNOCKBURN POLICE OFFICER ROBERT OGDEN; HIGHLAND PARK POLICE OFFICER GERALD CAMERON; HIGHLAND PARK POLICE OFFICER PHILIP DELAURENTIS; HIGHLAND PARK POLICE OFFICER AMY HYNDMAN; DEERFIELD POLICE OFFICER JOHN DOE #1; HIGHLAND PARK POLICE OFFICER JOHN DOE #2; RAVINIA FESTIVAL ASSOCIATION ("RAVINIA"); THE

1

CITY OF HIGHLAND PARK ("HIGHLAND PARK"); THE VILLAGE OF BANNOCKBURN ("BANNOCKBURN"); AND THE VILLAGE OF DEERFIELD ("DEERFIELD"):

## INTRODUCTION

1. This is an action for civil damages brought pursuant to 42 U.S.C. §1983 for the deprivation of Plaintiff's Constitutional rights. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1342.

2. Venue in this District is proper pursuant to 28 U.S.C. §1391 (b) because the facts which give rise to the claims asserted herein occurred within this District.

## THE PARTIES

3. Plaintiff, LINDA VANDENBURGH, ("Mrs. VanDenburgh"), is an individual and citizen and resident of the State of Illinois, who at all relevant times has resided in this District.

4. Defendant, BANNOCKBURN POLICE OFFICER ROBERT OGDEN, ("Officer Ogden"), was at all times material hereto a duly appointed Bannockburn Police Officer who was employed by the Village of Bannockburn and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer Ogden regularly conducted and was doing business in this District. Upon information and belief, he resides in this District.

5. Defendant, HIGHLAND PARK POLICE OFFICER GERALD CAMERON ("Officer Cameron"), was at all times material hereto a duly appointed Highland Park Police Officer who was employed by the City of Highland Park and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer

Cameron regularly conducted and was doing business in this District. Upon information and belief, he resides in this District.

6. Defendant, HIGHLAND PARK POLICE OFFICER PHILIP DELAURENTIS ("Officer DeLaurentis"), was at all times material hereto a duly appointed Highland Park Police Officer who was employed by the City of Highland Park and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer DeLaurentis regularly conducted and was doing business in this District. Upon information and belief, he resides in this District.

7. Defendant, HIGHLAND PARK POLICE OFFICER AMY HYNDMAN ("Officer Hyndman"), was at all times material hereto a duly appointed Highland Park Police Officer who was employed by the City of Highland Park and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer Hyndman regularly conducted and was doing business in this District. Upon information and belief, she resides in this District.

8. Defendant, DEERFIELD POLICE OFFICER JOHN DOE #1 ("Officer John Doe #1), was, on information and belief, at all times material hereto a duly appointed Deerfield Police Officer who was employed by the Village of Deerfield and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer John Doe #1 regularly conducted and was doing business in this District. Upon information and belief, he resides in this District.

9. Defendant, HIGHLAND PARK POLICE OFFICER JOHN DOE #2, Badge Number 86 ("Officer John Doe #2"), was at all times material hereto a duly appointed Highland Park Police Officer who was employed by the City of Highland Park

and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer John Doe #2 regularly conducted and was doing business in this District. Upon information and belief, he resides in this District.

10. Defendant, RAVINIA FESTIVAL ASSOCIATION, ("Ravinia Festival"), is a non-profit corporation duly organized and existing under the laws of the State of Illinois, with its principal place of business located within this District. At all relevant times, Ravinia Festival regularly conducted and was doing business in this District.

11. Defendant, CITY OF HIGHLAND PARK ("Highland Park"), is a municipal entity created and authorized under the laws of the State of Illinois. It is authorized by law to maintain, and maintains, a Police Department that acts as its agent in the area of law enforcement and for which it is ultimately responsible. Highland Park assumes the risks incidental to the maintenance of a police force and the employment of Police Officers. At all relevant times, Highland Park was the public employer of Defendants, Officer Cameron, Officer DeLaurentis, Officer Hyndman, and Officer John Doe #2. At all relevant times, Highland Park regularly conducted and was doing business in this District.

12. Defendant, VILLAGE OF BANNOCKBURN ("Bannockburn"), is a municipal entity created and authorized under the laws of the State of Illinois and is part of West Deerfield Township. It is authorized by law to maintain, and maintains, a Police Department that acts as its agent in the area of law enforcement and for which it is ultimately responsible. Bannockburn assumes the risks incidental to the maintenance of a police force and the employment of Police Officers. At all relevant times, Bannockburn was the public employer of Defendant, Officer Ogden. At all relevant times,

Bannockburn regularly conducted and was doing business in this District.

13. Defendant, VILLAGE OF DEERFIELD ("Deerfield"), is a municipal entity created and authorized under the laws of the State of Illinois and a part of West Deerfield Township. It is authorized by law to maintain, and maintains, a Police Department that acts as its agent in the area of law enforcement and for which it is ultimately responsible. Deerfield assumes the risks incidental to the maintenance of a police force and the employment of Police Officers. At all relevant times, Deerfield was the public employer of Defendant, Officer John Doe #1. At all relevant times, Deerfield regularly conducted and was doing business in this District.

## FACTUAL SUMMARY

14. On July 19, 2014, Mrs. VanDenburgh and her husband, Mark W. VanDenburgh ("Mr. VanDenburgh"), were attending an "Evening with Crosby, Stills, and Nash," a concert at The Pavilion at the Ravinia Music Festival, located at 200 Ravinia Park Road, Highland Park, IL 60035.

15. In the early evening, at or about 6:00 p.m. and prior to the commencement of the concert, the VanDenburghs purchased food and beverages from a vendor. The VanDenburghs then secured a spot to sit and eat, which was near the entrance to the Ravinia Festival food pavilion. Shortly thereafter, Mr. VanDenburgh left to use the restroom, while Mrs. VanDenburgh remained and ate her food.

16. Within minutes, a group of four or five adult men approached Mrs. VanDenburgh and began harassing her and attempting to solicit sexual favors from her as though she were a prostitute – and suggesting that she was a prostitute. In response, Mrs. VanDenburgh repeatedly yelled words to the following effect, "stop it!" and "get away

5

from me!" No one from Ravinia staff or security came to Mrs. VanDenburgh's aid.

17. Ultimately, and in response to Mrs. VanDenburgh's protestations, the men left the area.

18. Moments later, Mr. VanDenburgh returned, albeit after the above-described incident and after the men had already left.

19. At that time, Plaintiff was distraught and in tears.

20. Accordingly, the VanDenburghs approached a Ravinia staff-security member to inform him of what had just transpired and to inquire about filing a complaint.

21. The Ravinia staff-security member referred the VanDenburghs to Defendant, Officer DeLaurentis, who was nearby.

22. After Mrs. VanDenburgh recounted the events to Officer DeLaurentis, he was dismissive and responded by asking her, "did you get their names?" Officer DeLaurentis then sneered at Mrs. VanDenburgh, looked at her up and down, told her that he was "busy," and told her that she needed to "go away."

23. Mrs. VanDenburgh nonetheless told Officer DeLaurentis that she wanted to make a report and that she could point the Officer in the direction that the men walked after accosting her.

24. In response, Officer DeLaurentis shoved a card to Mrs. VanDenburgh that stated "Ravinia Concert: Questions, Comments, and Concerns," and directed her away from him.

25. Still distraught and frustrated by Officer DeLaurentis's conduct, Mrs. VanDenburgh approached several security guards, but they too refused to provide her with any assistance.

26. Ultimately, after having been thoroughly and repeatedly rebuffed, the VanDenburghs proceeded to their concert seats in the pavilion area (i.e., non-grassy area). The concert started some time at or about 7:30 p.m.

27. At or about 8:30 to 9 p.m., the concert stopped for an intermission.

28. During the intermission, the VanDenburghs left their seats to stretch their legs and use the restrooms.

29. While Mrs. VanDenburgh was standing in an outdoor line to use the women's restroom, she began discussing the incident that had occurred to her earlier that evening with several female concertgoers who were also waiting in the line to use the restroom.

30. As Mrs. VanDenburgh was engaging in that dialogue, Officer DeLaurentis was standing nearby.

31. As Mrs. VanDenburgh exited the restroom, Mr. VanDenburgh joined her after having used the men's restroom.

32. Officer DeLaurentis then approached Mr. VanDenburgh, heavily placed a hand on his shoulder, and forcefully told the VanDenburghs that they had to "go back to your seats or leave."

33. Although surprised and confused by this directive, the VanDenburghs returned to their seats.

34. However, as they were situating themselves in their seats, Officer DeLaurentis, and one or more of the following Defendant Police Officers -- Officers Ogden, Officer Cameron, Officer Hyndman, and/or Officer John Doe #1 -- and staff-security personnel of Ravinia Festival, congregated and were now standing at the end of

the row, a few feet away from the VanDenburghs. The Officers were staring at them, with their jackets open and with their arms on their sides – with their hands resting on their gun belts.

35. Mrs. VanDenburgh was scared and upset and began to cry. She thought the Officers were acting as if they were trying to intimidate her and as if they wanted to arrest her.

36. The VanDenburghs decided to exit their row as the Police Officers continued to stand in and block the exit aisle.

37. As the VanDenburghs attempted to walk around and past the Officers, one of the staff-security personnel approached Mr. VanDenburgh, stood nose-to-nose with him, and attempted to intimidate him. Mr. VanDenburgh stated that he had a right to be at the concert.

38. Before the VanDenburghs could even leave the aisle, one or more of the Officers violently shoved Mrs. VanDenburghs into a wheelchair that they controlled in an attempt to force her into the wheelchair. That act caused bruising to Mrs. VanDenburgh's legs and arms.

39. That act was committed by one or more of the following named Defendants -- Officer Ogden, Officer Cameron, Officer DeLaurentis, Officer Hyndman, and/or Officer John Doe #1.

40. The Officers then wheeled Mrs. VanDenburgh, involuntarily and against her will, out one of the side doors of the venue and to the area by the "Iris Gate." That is a relatively deserted area where buses drop off and pick up concertgoers. Mr. VanDenburgh attempted to walk alongside Mrs. VanDenburgh as all of this was

happening.

41.     Once they reached the Iris Gate, one or more of the following Defendant Officers -- Officer Ogden, Officer DeLaurentis, Officer Cameron, Officer Hyndman, or Officer John Doe #1 -- forcibly grabbed, lifted and jerked Mrs. VanDenburgh out of the wheelchair.  That action cause Mrs. VanDenburgh to fall heavily and awkwardly to the ground.

42.     Mrs. VanDenburgh, who was distraught and in tears, told the Defendant Officers that she was in pain, that she had previously broken her back, and that they were hurting her shoulder and back.

43.      After having abused and injured Mrs. VanDenburgh, the Officers called over the paramedics who were already present at the event and stationed nearby.

44.     The paramedics asked Mrs. VanDenburgh, who was obviously in pain, how she was doing.  Mrs. VanDenburgh explained to them that the Officers had hurt her shoulder and back, and that she had fallen to the ground as a result of their actions.

45.     The paramedics asked Mrs. VanDenburgh if she wanted to go to the hospital, and she replied that she just wanted to return to the concert.  The paramedics then left the area.

46.     After the paramedics left the area, one or more of the following Defendant Officers -- Officer Ogden, Officer Cameron, Officer Hyndman, and/or Officer John Doe #1, forcefully grabbed Mrs. VanDenburgh's arm and yanked her up off of the ground.  Mrs. VanDenburgh felt her shoulder tear, and thus she started to scream in pain.

47.     The Defendant Officers, entirely disregarding Mrs. VanDenburgh's cries, handcuffed her, dragged her to a police car against her will, and threw her in the back of

the car – further bruising her arms and legs in the process.

48. While she was lying in the back of the squad car, Mrs. VanDenburgh continued to cry and cry out, and repeatedly stated that she was seriously injured.

49. While all of this was happening, Mr. VanDenburgh begged the Defendant Officer to stop hurting his wife. In response, one of the Officers– either Officer Ogden or Office Cameron – stated words to the effect, "if you move, I'm going to light you up," while placing his hand on his Taser. Officer DeLaurentis then stated to the other Officers around him, "be careful. This is a big boy." Several of the Officers ultimately forced Mr. VanDenburgh into a nearby cab.

50. One or more of the following Defendant Officers then removed and forcefully dragged Mrs. VanDenburgh out of the back of the squad car and onto the ground -- Officer DeLaurentis, Officer Ogden, Officer Hyndman, and/or Officer Cameron.

51. At the insistence of the paramedics, the Officers removed the handcuffs from Mrs. VanDenburgh, and allowed the paramedics to examine Mrs. VanDenburgh. The paramedics placed Mrs. VanDenburgh onto a stretcher, and moved her to the ambulance. Mrs. VanDenburgh was transported by ambulance to the emergency room at NorthShore Highland Park Hospital.

52. At the hospital, Officer John Doe #2 and another Highland Park Officer were waiting for her. The treating doctor examined and spoke to Mrs. VanDenburgh, and informed her that she need to see an orthopedic surgeon as soon as possible. That doctor also stated that he could see that Mrs. VanDenburgh was *not* inebriated, even though the Defendant Officers were attempting to claim that she was inebriated, and that he was

going to discharge her.

53. After the doctor left the examining room, the second Highland Park Officer approached Mrs. VanDenburgh and started taking pictures of her arms and legs. He also snidely remarked that her bruises looked like "old injuries."

54. Shortly thereafter, Officer John Doe #2 approached Mrs. VanDenburgh and handed her two Citations and informed her that she needed to sign them. The citations were for the following offenses: 1) interference with a police officer, and 2) criminal trespass to property. Mrs. VanDenburgh did not sign the Citations because she wanted the advice of a lawyer.

55. Defendant Officer John Doe #2 threatened Mrs. VanDenburgh that, if she did not sign the Citations, he would take her to the Highland Park jail.

56. Ultimately, the VanDenburghs were allowed to leave the hospital, and they took a cab to their home to Chicago.

57. As a direct and proximate result of the Defendant Officers' actions, Mrs. VanDenburgh suffered a five-centimeter rotator cuff tear on her right shoulder that required surgery. Mrs. VanDenburgh was also required to undergo physical therapy for a number of months following the surgery, and she continues to suffer from on-going, daily soreness and pain in her right shoulder and mental distress.

**COUNT I**
**42 U.S.C. §1983: False Arrest/Unlawful Detention**
**(By Plaintiff against Defendant Officer Robert Ogden; Officer Gerald Cameron; Officer Philip DeLaurentis; Officer John Doe #1 and Officer John Doe #2; and Officer Amy Hyndman)**

58. Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 58 of Count I.

59. As described above, the Defendant Officers falsely arrested and unlawfully detained Mrs. VanDenburgh without justification and without probable cause.

60. The gross and intentional misconduct described in this Count was undertaken by the Defendant Officers with malice, willfulness, and reckless indifference to the rights of others, and specifically, the rights of Mrs. VanDenburgh.

61. As a direct and proximate result of the above-described wrongful infringement of Mrs. VanDenburgh's rights, she has suffered damages, including but not limited to physical injuries and mental distress and anguish.

## COUNT II
## 42 U.S.C. §1983; Excessive Force
**(By Plaintiff against Defendants Officer Robert Ogden; Officer Gerald Cameron; Officer Philip DeLaurentis; Officer John Doe #1; and Officer Amy Hyndman)**

62. Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 62 of Count II.

63. The acts of the Defendants Officers constituted a deliberate and malicious deprivation of the Mrs. VanDenburgh's Constitutional rights against excessive force as guaranteed her by the Fourth Amendment of the Constitution and made applicable to the States by the Fourteenth Amendment.

64. As a direct and proximate result of the unreasonable and unjustifiable excessive force used by the Defendant Officers, Mrs. VanDenburgh has suffered physical and emotional injuries, and other damages in violation of 42 U.S.C. §1983.

## COUNT III
## State Law Claim: Assault and Battery
**(By Plaintiff against Defendants Officer Robert Ogden; Officer Gerald Cameron; Officer Philip DeLaurentis; Officer John Doe #1; and Officer Amy Hyndman)**

65. Mrs. VanDenburgh re-alleges and incorporates by reference as though

fully set forth herein, Paragraphs 1 through 57 above as Paragraph 65 of Count III.

66. As described above, the misconduct of the Defendant Officers, acting under color of law and within the scope of their employment, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing Mrs. VanDenburgh's bodily injuries.

67. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mrs. VanDenburgh's Constitutional rights.

68. The misconduct described above was undertaken by the Defendants Officers within the scope of their employment such that their employers, the City of Highland Park, the Village of Bannockburn, and the Village of Deerfield, respectively, are liable for their actions.

69. As a direct and proximate result of the acts and misconduct of the Defendant Officers, Mrs. VanDenburgh has suffered physical and emotional injuries, and other damages.

### COUNT IV
### State Law Claim: Malicious Prosecution
**(By Plaintiff against Defendants Officer Robert Ogden; Officer Gerald Cameron; Officer Philip DeLaurentis; Officer John Doe #1 and Officer John Doe #2; and Officer Amy Hyndman)**

70. Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 70 of Count IV.

71. As described above, the Defendant Officers falsely arrested and unlawfully detained Mrs. VanDenburgh without justification and without probable cause.

72. Mrs. VanDenburgh was improperly subjected to judicial proceedings for

13

which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and one of the two proceedings was terminated in her favor.

73. As a direct and proximate result of the above-described wrongful infringement of Mrs. VanDenburgh's rights, Mrs. VanDenburgh suffered financial and other damages, including but not limited to substantial mental stress and anguish, and the loss of liberty.

74. The misconduct described above as undertaken by Defendant Officers within the scope of their employment, such that their employers, the City of Highland Park, the Village of Bannockburn, and the Village of Deerfield, respectively, are liable for their actions.

## COUNT V
### State Law Claim: Indemnification
**(By Plaintiff against Defendants The City Of Highland Park; The Village Of Bannockburn; and The Village Of Deerfield)**

75. Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 75 of Count V.

76. In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

77. The Defendant Officers are or were employees of the City of Highland Park, the Village of Bannockburn, and the Village of Deerfield, and acted within the scope of their employment in committing the misconduct described herein.

**COUNT VI**
**State Law Claim: Negligence**
**(By Plaintiff against Defendants Officer Gerald Cameron; Officer Philip DeLaurentis; Officer Amy Hyndman; Officer Robert Ogden; Officer John Doe #1; The City Of Highland Park; The Village Of Bannockburn; and The Village Of Deerfield)**

78. Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 78 of Count VI.

79. Defendant Officers owed Mrs. VanDenburgh a duty of care to avoid intentionally causing her personal injury.

80. Defendant Officers breached that duty of care through their conduct, described above, acting under color of law and within the scope of their employment, by performing unjustified and offensive physical contact with Mrs. VanDenburgh, undertaken willfully and wantonly, and which directly and proximately caused Mrs. VanDenburgh's bodily injuries.

81. The misconduct described above was objectively unreasonable and was undertaken intentionally with willful indifference to Mrs. VanDenburgh's Constitutional rights.

82. The misconduct described above was undertaken by the Defendant Officers within the scope of their employment such that their employers, the City of Highland Park, the Village of Bannockburn, and the Village of Deerfield, respectively, are liable for their actions.

**COUNT VII**
**State Law Claim: Negligence**
**(By Plaintiff against Defendant Ravinia Festival Association)**

83. Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 83 of Count VII.

15

84. At all relevant times, Defendant, Ravinia Festival, was under a duty to exercise reasonable care for the safety of all concertgoers, including Mrs. VanDenburgh, to among other things, ensure that the venue was a safe environment for all of the patrons of the concert.

85. At all relevant times, Ravinia Festival breached that duty in one or more of the following ways:

   a. Failing to hire enough security personnel to ensure that patrons felt safe at the venue.

   b. Failing to provide a procedure for patrons to use in case they wanted to file a report or a complaint.

   c. Failing to train security personnel such that they could appropriately handle reports of harassing behavior.

   d. Failing to supervise and train employees as to the proper handling of customer concerns and complaints.

   e. Failing to supervise and train employees as to the safe handling and escort of guests.

   f. Failing to supervise and train Police Officers working on Ravinia Festival's premise as to the safe, appropriate, and legal handling of guests.

86. As a direct and proximate cause of Ravinia Festival's breach of its duties to Mrs. VanDenburgh as described above and otherwise, Mrs. VanDenburgh has suffered severe and permanent physical injuries and emotional distress, including but not limited to, pain and suffering, medical and legal expenses, and emotional distress.

**REQUEST FOR RELIEF**

87. Plaintiff, LINDA VANDENBURGH, respectfully requests that the Court

   a. Enter a judgment in her favor and against Defendants, OFFICER OGDEN; OFFICER CAMERON; OFFICER DELAURENTIS;

16

    OFFICER HYNDMAN; OFFICER JOHN DOE #1; OFFICER JOHN DOE #2; CITY OF HIGHLAND PARK; VILLAGE OF BANNOCKBURN; VILLAGE OF DEERFIELD; and RAVINIA FESTIVAL ASSOCIATION

b. Award compensatory damages against all Defendants;

c. Award attorney's fees against all Defendants;

d. Award punitive damages against all Defendants;

e. Require DEFENDANT RAVINIA FESTIVAL ASSOCIATION to implement better and adequate security measures for concertgoers.

f. Award pre-judgment interest; and

g. Grant any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, LINDA VANDENBURGH, demands a trial by jury under the Federal Rule of Civil Procedure 38(b) on all issues so triable.

       **RESPECTFULLY SUBMITTED,**

      By: **/s/Michael I. Leonard**
         **Attorney for Plaintiff**

**LEONARDMEYER, LLP**
Michael I. Leonard
Ethan E. White
Maryam Arfeen
203 North LaSalle, Suite 1620
Chicago, Illinois 60601
(312) 380-6659 (direct)
(312)264-0671 (fax)
mleonard@leonardmeyerllp.com
ewhite@leonardmeyerllp.com
marfeen@leonardmeyerllp.com