1835/15-6818.UD / mja

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA S. VANDENBURGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Bannockburn Police Officer ROBERT | ) | No.: 1:15-CV-06191 |
| OGDEN; Highland Park Police Officer | ) | |
| GERALD CAMERON; Highland Park Police | ) | |
| Officer PHILIP DELAURENTIS; Highland | ) | |
| Park Police Officer AMY HYNDMAN; | ) | |
| Deerfield Police Officer JOHN DOE #1; | ) | |
| Highland Park Police Officer JOHN DOE #2; | ) | Judge Sara L. Ellis |
| RAVINIA FESTIVAL ASSOCATION, an | ) | |
| Illinois Not-For-Profit Organization; THE | ) | |
| CITY OF HIGHLAND PARK, a Municipal | ) | |
| Corporation; THE VILLAGE OF | ) | |
| BANNOCKBURN, a Municipal Corporation; | ) | |
| and THE VILLAGE OF DEERFIELD, a | ) | |
| Municipal Corporation, | ) | |
| | ) | |
| Defendants. | ) | Magistrate Judge Maria Valdez |
| | ) | |

**DEFENDANTS CITY OF HIGHLAND PARK, GERALD CAMERON,
PHILIP DELAURENTIS, AND AMY HYNDMAN'S ANSWER AND
AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

NOW COME the Defendants, HIGHLAND PARK POLICE OFFICER GERALD
CAMERON, HIGHLAND PARK POLICE OFFICER PHILIP DELAURENTIS, HIGHLAND
PARK POLICE OFFICER AMY HYNDMAN, and the CITY OF HIGHLAND PARK, by and
through one of their attorneys at KNIGHT, HOPPE, KURNIK & KNIGHT, LTD., and for their
Answer to the Complaint of the Plaintiff, Linda S. Vandenburgh, state as follows:

## INTRODUCTION

1.    This is an action for civil damages brought pursuant to 42 U.S.C. §1983 for the deprivation of Plaintiff's Constitutional rights. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1342.

**ANSWER:    Defendants admit the allegations set forth in paragraph one (1).**

2.    Venue in this District is proper pursuant to 28 U.S.C. §1391 (b) because the facts which give rise to the claims asserted herein occurred within this District.

**ANSWER:    Defendants admit the allegations set forth in paragraph two (2).**

## THE PARTIES

3.    Plaintiff, LINDA VANDENBURGH, ("Mrs. VanDenburgh"), is an individual and citizen and resident of the State of Illinois, who at all relevant times has resided in this District.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph three (3).**

4.    Defendant, BANNOCKBURN POLICE OFFICER ROBERT OGDEN, ("Officer Ogden"), was at all times material hereto a duly appointed Bannockburn Police Officer who was employed by the Village of Bannockburn and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer Ogden regularly conducted and was doing business in this District. Upon information and belief, he resides in this District.

**ANSWER:    Defendants admit the allegations in paragraph four (4).**

5.    Defendant, HIGHLAND PARK POLICE OFFICER GERALD CAMERON ("Officer Cameron"), was at all times material hereto a duly appointed Highland Park Police Officer who was employed by the City of Highland Park and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer Cameron regularly conducted and was doing business in this District. Upon information and belief, he resides in this District.

**ANSWER:    Defendants admit the allegations in paragraph five (5).**

6.    Defendant, HIGHLAND PARK POLICE OFFICER PHILIP DELAURENTIS ("Officer DeLaurentis"), was at all times material hereto a duly appointed Highland Park Police Officer who was employed by the City of Highland Park and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer DeLaurentis regularly conducted and was doing business in this District. Upon information and belief, he resides in this District.

**ANSWER:    Defendants admit the allegations in paragraph six (6).**

2

7.     Defendant, HIGHLAND PARK POLICE OFFICER AMY HYNDMAN ("Officer Hyndman"), was at all times material hereto a duly appointed Highland Park Police Officer who was employed by the City of Highland Park and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer Hyndman regularly conducted and was doing business in this District. Upon information and belief, she resides in this District.

**ANSWER:     Defendants admit the allegations in paragraph seven (7).**

8.     Defendant, DEERFIELD POLICE OFFICER JOHN DOE #1 ("Officer John Doe #1), was, on information and belief, at all times material hereto a duly appointed Deerfield Police Officer who was employed by the Village of Deerfield and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer John Doe #1 regularly conducted and was doing business in this District. Upon information and belief, he resides in this District.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph eight (8).**

9.     Defendant, HIGHLAND PARK POLICE OFFICER JOHN DOE #2, Badge Number 86 ("Officer John Doe #2"), was at all times material hereto a duly appointed Highland Park Police Officer who was employed by the City of Highland Park and acting in the capacity of a sworn law enforcement official. At all relevant times, Officer John Doe #2 regularly conducted and was doing business in this District. Upon information and belief, he resides in this District.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph nine (9).**

10.     Defendant, RAVINIA FESTIVAL ASSOCIATION, ("Ravinia Festival"), is a non-profit corporation duly organized and existing under the laws of the State of Illinois, with its principal place of business located within this District. At all relevant times, Ravinia Festival regularly conducted and was doing business in this District.

**ANSWER:     Defendants admit the allegations in paragraph ten (10).**

11.     Defendant, CITY OF HIGHLAND PARK ("Highland Park"), is a municipal entity created and authorized under the laws of the State of Illinois. It is authorized by law to maintain, and maintains, a Police Department that acts as its agent in the area of law enforcement and for which it is ultimately responsible. Highland Park assumes the risks incidental to the maintenance of a police force and the employment of Police Officers. At all relevant times, Highland Park was the public employer of Defendants, Officer Cameron, Officer DeLaurentis, Officer Hyndman, and Officer John Doe #2. At all relevant times, Highland Park regularly conducted and was doing business in this District.

**ANSWER:**    **Defendants admit the allegations in paragraph eleven (11), except that as Officer John Doe #2 is not identified, the Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations concerning him.**

12.    Defendant, VILLAGE OF BANNOCKBURN ("Bannockburn"), is a municipal entity created and authorized under the laws of the State of Illinois and is part of West Deerfield Township. It is authorized by law to maintain, and maintains, a Police Department that acts as its agent in the area of law enforcement and for which it is ultimately responsible. Bannockburn assumes the risks incidental to the maintenance of a police force and the employment of Police Officers. At all relevant times, Bannockburn was the public employer of Defendant, Officer Ogden. At all relevant times, Bannockburn regularly conducted and was doing business in this District.

**ANSWER:**    **Defendants admit the allegations in paragraph twelve (12).**

13.    Defendant, VILLAGE OF DEERFIELD ("Deerfield"), is a municipal entity created and authorized under the laws of the State of Illinois and a part of West Deerfield Township. It is authorized by law to maintain, and maintains, a Police Department that acts as its agent in the area of law enforcement and for which it is ultimately responsible. Deerfield assumes the risks incidental to the maintenance of a police force and the employment of Police Officers. At all relevant times, Deerfield was the public employer of Defendant, Officer John Doe #1. At all relevant times, Deerfield regularly conducted and was doing business in this District.

**ANSWER:**    **Defendants admit the allegations in paragraph thirteen (13), except that as Officer John Doe #1 is not identified, the Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations concerning him.**

## FACTUAL SUMMARY

14.    On July 19, 2014, Mrs. VanDenburgh and her husband, Mark W. VanDenburgh ("Mr. VanDenburgh"), were attending an "Evening with Crosby, Stills, and Nash," a concert at The Pavilion at the Ravinia Music Festival, located at 200 Ravinia Park Road, Highland Park, IL 60035.

**ANSWER:**    **Defendants admit the allegations in paragraph fourteen (14).**

15.    In the early evening, at or about 6:00 p.m. and prior to the commencement of the concert, the VanDenburghs purchased food and beverages from a vendor. The VanDenburghs then secured a spot to sit and eat, which was near the entrance to the Ravinia Festival food pavilion. Shortly thereafter, Mr. VanDenburgh left to use the restroom, while Mrs. VanDenburgh remained and ate her food.

4

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph fifteen (15).**

16.     Within minutes, a group of four or five adult men approached Mrs. VanDenburgh and began harassing her and attempting to solicit sexual favors from her as though she were a prostitute – and suggesting that she was a prostitute. In response, Mrs. VanDenburgh repeatedly yelled words to the following effect, "stop it!" and "get away from me!" No one from Ravinia staff or security came to Mrs. VanDenburgh's aid.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph sixteen (16).**

17.     Ultimately, and in response to Mrs. VanDenburgh's protestations, the men left the area.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph seventeen (17).**

18.     Moments later, Mr. VanDenburgh returned, albeit after the above described incident and after the men had already left.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph eighteen (18).**

19.     At that time, Plaintiff was distraught and in tears.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph nineteen (19).**

20.     Accordingly, the VanDenburghs approached a Ravinia staff-security member to inform him of what had just transpired and to inquire about filing a complaint.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph twenty (20).**

21.     The Ravinia staff-security member referred the VanDenburghs to Defendant, Officer DeLaurentis, who was nearby.

**ANSWER:**     **Defendants deny the allegations in paragraph twenty-one (21).**

22.     After Mrs. VanDenburgh recounted the events to Officer DeLaurentis, he was dismissive and responded by asking her, "did you get their names?" Officer DeLaurentis then

sneered at Mrs. VanDenburgh, looked at her up and down, told her that he was "busy," and told her that she needed to "go away."

**ANSWER:** **Defendants deny the allegations in paragraph twenty-two (22).**

23. Mrs. VanDenburgh nonetheless told Officer DeLaurentis that she wanted to make a report and that she could point the Officer in the direction that the men walked after accosting her.

**ANSWER:** **Defendants deny the allegations in paragraph twenty-three (23).**

24. In response, Officer DeLaurentis shoved a card to Mrs. VanDenburgh that stated "Ravinia Concert: Questions, Comments, and Concerns," and directed her away from him.

**ANSWER:** **Defendants deny the allegations in paragraph twenty-four (24).**

25. Still distraught and frustrated by Officer DeLaurentis's conduct, Mrs. VanDenburgh approached several security guards, but they too refused to provide her with any assistance.

**ANSWER:** **Defendants deny the allegations in paragraph twenty-five (25).**

26. Ultimately, after having been thoroughly and repeatedly rebuffed, the VanDenburghs proceeded to their concert seats in the pavilion area (i.e., non-grassy area). The concert started some time at or about 7:30 p.m.

**ANSWER:** **Defendants admit the concert started some time at or about 7:30 p.m. Defendants deny the remaining allegations in paragraph twenty-six (26).**

27. At or about 8:30 to 9 p.m., the concert stopped for an intermission.

**ANSWER:** **Defendants admit the allegations in paragraph twenty-seven (27).**

28. During the intermission, the VanDenburghs left their seats to stretch their legs and use the restrooms.

**ANSWER:** **Defendants admit the Vandenburghs left their seats during the intermission. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph twenty-eight (28).**

29.     While Mrs. VanDenburgh was standing in an outdoor line to use the women's restroom, she began discussing the incident that had occurred to her earlier that evening with several female concertgoers who were also waiting in the line to use the restroom.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph twenty-nine (29).**

30.     As Mrs. VanDenburgh was engaging in that dialogue, Officer DeLaurentis was standing nearby.

**ANSWER:**     **Defendants deny the allegations in paragraph thirty (30).**

31.     As Mrs. VanDenburgh exited the restroom, Mr. VanDenburgh joined her after having used the men's restroom.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph thirty-one (31).**

32.     Officer DeLaurentis then approached Mr. VanDenburgh, heavily placed a hand on his shoulder, and forcefully told the VanDenburghs that they had to "go back to your seats or leave."

**ANSWER:**     **Defendants deny the allegations in paragraph thirty-two (32).**

33.     Although surprised and confused by this directive, the VanDenburghs returned to their seats.

**ANSWER:**     **Defendants admit that the Vandenburghs returned to their seats for the second half of the concert.  Defendants deny the remaining allegations in paragraph thirty-three (33).**

34.     However, as they were situating themselves in their seats, Officer DeLaurentis, and one or more of the following Defendant Police Officers – Officers Ogden, Officer Cameron, Officer Hyndman, and/or Officer John Doe #1 – and staff security personnel of Ravinia Festival, congregated and were now standing at the end of the row, a few feet away from the VanDenburghs. The Officers were staring at them, with their jackets open and with their arms on their sides – with their hands resting on their gun belts.

**ANSWER:**     **Defendants deny the allegations in paragraph thirty-four (34).**

35.     Mrs. VanDenburgh was scared and upset and began to cry. She thought the Officers were acting as if they were trying to intimidate her and as if they wanted to arrest her.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph thirty-five (35).**

36.     The VanDenburghs decided to exit their row as the Police Officers continued to stand in and block the exit aisle.

**ANSWER:**     **Defendants deny the allegations in paragraph thirty-six (36).**

37.     As the VanDenburghs attempted to walk around and past the Officers, one of the staff-security personnel approached Mr. VanDenburgh, stood nose-to-nose with him, and attempted to intimidate him. Mr. VanDenburgh stated that he had a right to be at the concert.

**ANSWER:**     **Defendants deny the allegations in paragraph thirty-seven (37).**

38.     Before the VanDenburghs could even leave the aisle, one or more of the Officers violently shoved Mrs. VanDenburghs into a wheelchair that they controlled in an attempt to force her into the wheelchair. That act caused bruising to Mrs. VanDenburgh's legs and arms.

**ANSWER:**     **Defendants deny the allegations in paragraph thirty-eight (38).**

39.     That act was committed by one or more of the following named Defendants – Officer Ogden, Officer Cameron, Officer DeLaurentis, Officer Hyndman, and/or Officer John Doe #1.

**ANSWER:**     **Defendants deny the allegations in paragraph thirty-nine (39).**

40.     The Officers then wheeled Mrs. VanDenburgh, involuntarily and against her will, out one of the side doors of the venue and to the area by the "Iris Gate." That is a relatively deserted area where buses drop off and pick up concertgoers. Mr. VanDenburgh attempted to walk alongside Mrs. VanDenburgh as all of this was happening.

**ANSWER:**     **Defendants admit that Mrs. Vandenburgh was wheeled to the area by the "Iris Gate." Defendants deny the remaining allegations in paragraph forty (40).**

41.     Once they reached the Iris Gate, one or more of the following Defendant Officers – Officer Ogden, Officer DeLaurentis, Officer Cameron, Officer Hyndman, or Officer John Doe #1 – forcibly grabbed, lifted and jerked Mrs. VanDenburgh out of the wheelchair. That action caused Mrs. VanDenburgh to fall heavily and awkwardly to the ground.

**ANSWER:**     **Defendants deny the allegations in paragraph forty-one (41).**

42.     Mrs. VanDenburgh, who was distraught and in tears, told the Defendant Officers that she was in pain, that she had previously broken her back, and that they were hurting her shoulder and back.

**ANSWER:     Defendants deny the allegations in paragraph forty-two (42).**

43.     After having abused and injured Mrs. VanDenburgh, the Officers called over the paramedics who were already present at the event and stationed nearby.

**ANSWER:     Defendants admit paramedics were called over to the area near the Iris Gate to treat Mrs. Vandenburgh.  Defendants deny the remaining allegations in paragraph forty-three (43).**

44.     The paramedics asked Mrs. VanDenburgh, who was obviously in pain, how she was doing. Mrs. VanDenburgh explained to them that the Officers had hurt her shoulder and back, and that she had fallen to the ground as a result of their actions.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph forty-four (44).**

45.     The paramedics asked Mrs. VanDenburgh if she wanted to go to the hospital, and she replied that she just wanted to return to the concert. The paramedics then left the area.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph forty-five (45).**

46.     After the paramedics left the area, one or more of the following Defendant Officers – Officer Ogden, Officer Cameron, Officer Hyndman, and/or Officer John Doe #1, forcefully grabbed Mrs. VanDenburgh's arm and yanked her up off of the ground.  Mrs. VanDenburgh felt her shoulder tear, and thus she started to scream in pain.

**ANSWER:     Defendants deny the allegations in paragraph forty-six (46).**

47.     The Defendant Officers, entirely disregarding Mrs. VanDenburgh's cries, handcuffed her, dragged her to a police car against her will, and threw her in the back of the car – further bruising her arms and legs in the process.

**ANSWER:     Defendants admit that Mrs. Vandenburgh was handcuffed and placed in the back of a patrol car against her will.  Defendants deny any and all remaining allegations contained in paragraph forty-seven (47).**

48.     While she was lying in the back of the squad car, Mrs. VanDenburgh continued to cry and cry out, and repeatedly stated that she was seriously injured.

**ANSWER:**     **Defendants admit the allegations in paragraph forty-eight (48).**

49.     While all of this was happening, Mr. VanDenburgh begged the Defendant Officer to stop hurting his wife. In response, one of the Officers – either Officer Ogden or Office Cameron – stated words to the effect, "if you move, I'm going to light you up," while placing his hand on his Taser. Officer DeLaurentis then stated to the other Officers around him, "be careful. This is a big boy." Several of the Officers ultimately forced Mr. VanDenburgh into a nearby cab.

**ANSWER:**     **Defendants deny the allegations in paragraph forty-nine (49).**

50.     One or more of the following Defendant Officers then removed and forcefully dragged Mrs. VanDenburgh out of the back of the squad car and onto the ground – Officer DeLaurentis, Officer Ogden, Officer Hyndman, and/or Officer Cameron.

**ANSWER:**     **Defendants admit that Mrs. Vandenburgh was removed from the back of the patrol car. Defendants deny the remaining allegations in paragraph fifty (50).**

51.     At the insistence of the paramedics, the Officers removed the handcuffs from Mrs. VanDenburgh, and allowed the paramedics to examine Mrs. VanDenburgh. The paramedics placed Mrs. VanDenburgh onto a stretcher, and moved her to the ambulance. Mrs. VanDenburgh was transported by ambulance to the emergency room at Northshore Highland Park Hospital.

**ANSWER:**     **Defendants admit that officers removed the handcuffs from Mrs. Vandenburgh, that paramedics examined her, placed her onto a stretcher and moved her to the ambulance. Defendants admit that Mrs. Vandenburgh was transported to the ER at Northshore Hospital by ambulance. Defendants deny any and all remaining allegations in paragraph fifty-one (51).**

52.     At the hospital, Officer John Doe #2 and another Highland Park Officer were waiting for her. The treating doctor examined and spoke to Mrs. VanDenburgh, and informed her that she need to see an orthopedic surgeon as soon as possible. That doctor also stated that he could see that Mrs. VanDenburgh was *not* inebriated, even though the Defendant Officers were attempting to claim that she was inebriated, and that he was going to discharge her.

**ANSWER:**     **Defendants admit two Highland Park police officers waited at the hospital for Mrs. Vandenburgh. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph fifty-two (52).**

53.     After the doctor left the examining room, the second Highland Park Officer approached Mrs. VanDenburgh and started taking pictures of her arms and legs.  He also snidely remarked that her bruises looked like "old injuries."

**ANSWER:**     **Defendants admit that a Highland Park police officer took pictures of Mrs. Vandenburgh at the hospital.  Defendants deny the remaining allegations in paragraph fifty-three (53).**

54.     Shortly thereafter, Officer John Doe #2 approached Mrs. VanDenburgh and handed her two Citations and informed her that she needed to sign them. The citations were for the following offenses: 1) interference with a police officer, and 2) criminal trespass to property. Mrs. VanDenburgh did not sign the Citations because she wanted the advice of a lawyer.

**ANSWER:**     **Defendants admit that Mrs. Vandenburgh was issued two citations for interference with a police officer and criminal trespass to property. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph fifty-four (54).**

55.     Defendant Officer John Doe #2 threatened Mrs. VanDenburgh that, if she did not sign the Citations, he would take her to the Highland Park jail.

**ANSWER:**     **Defendants deny the allegations in paragraph fifty-five (55).**

56.     Ultimately, the VanDenburghs were allowed to leave the hospital, and they took a cab to their home to Chicago.

**ANSWER:**     **Defendants admit that the Vandenburghs were allowed to leave the hospital. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph fifty-six (56).**

57.     As a direct and proximate result of the Defendant Officers' actions, Mrs. VanDenburgh suffered a five-centimeter rotator cuff tear on her right shoulder that required surgery. Mrs. VanDenburgh was also required to undergo physical therapy for a number of months following the surgery, and she continues to suffer from on-going, daily soreness and pain in her right shoulder and mental distress.

**ANSWER:**     **Defendants deny the allegations in paragraph fifty-seven (57).**

## COUNT I

### 42 U.S.C. §1983: False Arrest/Unlawful Detention

### (By Plaintiff against Defendant Officer Robert Ogden; Officer Gerald Cameron; Officer Philip DeLaurentis; Officer John Doe #1 and Officer John Doe #2; and Officer Amy Hyndman)

58.     Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 58 of Count I.

**ANSWER:     Defendants incorporate their answers to paragraphs one (1) through fifty-seven (57) as though fully set forth here.**

59.     As described above, the Defendant Officers falsely arrested and unlawfully detained Mrs. VanDenburgh without justification and without probable cause.

**ANSWER:     Defendants deny the allegations in paragraph fifty-nine (59).**

60.     The gross and intentional misconduct described in this Count was undertaken by the Defendant Officers with malice, willfulness, and reckless indifference to the rights of others, and specifically, the rights of Mrs. VanDenburgh.

**ANSWER:     Defendants deny the allegations in paragraph sixty (60).**

61.     As a direct and proximate result of the above-described wrongful infringement of Mrs. VanDenburgh's rights, she has suffered damages, including but not limited to physical injuries and mental distress and anguish.

**ANSWER:     Defendants deny the allegations in paragraph sixty-one (61).**

## COUNT II

### 42 U.S.C. §1983: Excessive Force

### (By Plaintiff against Defendants Officer Robert Ogden; Officer Gerald Cameron; Officer Philip DeLaurentis; Officer John Doe #1; and Officer Amy Hyndman)

62.     Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 62 of Count II.

**ANSWER:      Defendants incorporate their answers to paragraphs one (1) through fifty-seven (57) as though fully set forth here.**

63. The acts of the Defendants Officers constituted a deliberate and malicious deprivation of the Mrs. VanDenburgh's Constitutional rights against excessive force as guaranteed her by the Fourth Amendment of the Constitution and made applicable to the States by the Fourteenth Amendment.

**ANSWER:** **Defendants deny the allegations in paragraph sixty-three (63).**

64. As a direct and proximate result of the unreasonable and unjustifiable excessive force used by the Defendant Officers, Mrs. VanDenburgh has suffered physical and emotional injuries, and other damages in violation of 42 U.S.C. §1983.

**ANSWER:** **Defendants deny the allegations in paragraph sixty-four (64).**

## COUNT III

### State Law Claim: Assault and Battery

**(By Plaintiff against Defendants Officer Robert Ogden; Officer Gerald Cameron; Officer Philip DeLaurentis; Officer John Doe #1; and Officer Amy Hyndman)**

65. Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 65 of Count III.

**ANSWER:** **Defendants incorporate their answers to paragraphs one (1) through fifty-seven (57) as though fully set forth here.**

66. As described above, the misconduct of the Defendant Officers, acting under color of law and within the scope of their employment, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing Mrs. VanDenburgh's bodily injuries.

**ANSWER:** **Defendants admit that at all times the Defendant officers acted under color of law and within the scope of their employment. Defendants deny the remaining allegations in paragraph sixty-six (66).**

67. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mrs. VanDenburgh's Constitutional rights.

**ANSWER:** **Defendants deny the allegations in paragraph sixty-seven (67).**

68. The misconduct described above was undertaken by the Defendants Officers within the scope of their employment such that their employers, the City of Highland Park, the Village of Bannockburn, and the Village of Deerfield, respectively, are liable for their actions.

13

**ANSWER:**     **Defendants admit that at all times the Defendant Officers acted within the scope of their employment.**

69.     As a direct and proximate result of the acts and misconduct of the Defendant Officers, Mrs. VanDenburgh has suffered physical and emotional injuries, and other damages.

**ANSWER:**     **Defendants deny the allegations in paragraph sixty-nine (69).**

## COUNT IV

### State Law Claim: Malicious Prosecution

**(By Plaintiff against Defendants Officer Robert Ogden; Officer Gerald Cameron; Officer Philip DeLaurentis; Officer John Doe #1 and Officer John Doe #2; and Officer Amy Hyndman)**

70.     Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 70 of Count IV.

**ANSWER:**     **Defendants incorporate their answers to paragraphs one (1) through fifty-seven (57) as though fully set forth here.**

71.     As described above, the Defendant Officers falsely arrested and unlawfully detained Mrs. VanDenburgh without justification and without probable cause.

**ANSWER:**     **Defendants deny the allegations in paragraph seventy (70).**

72.     Mrs. VanDenburgh was improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and one of the two proceedings was terminated in her favor.

**ANSWER:**     **Defendants admit that judicial proceedings were instituted and continued. Defendants admit that one charge was terminated in Mrs. Vandenburgh's favor. Defendants deny the remaining allegations in paragraph seventy-two (72).**

73.     As a direct and proximate result of the above-described wrongful infringement of Mrs. VanDenburgh's rights, Mrs. VanDenburgh suffered financial and other damages, including but not limited to substantial mental stress and anguish, and the loss of liberty.

**ANSWER:**     **Defendants deny the allegations in paragraph seventy-three (73).**

74.     The misconduct described above as undertaken by Defendant Officers within the scope of their employment, such that their employers, the City of Highland Park, the Village of Bannockburn, and the Village of Deerfield, respectively, are liable for their actions.

**ANSWER:**     **Defendants admit that at all times the Defendant Officers acted within the scope of their employment.**

## COUNT V

### State Law Claim: Indemnification

#### (By Plaintiff against Defendants The City Of Highland Park; The Village Of Bannockburn; and The Village Of Deerfield)

75.     Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 75 of Count V.

**ANSWER:**     **Defendants incorporate their answers to paragraphs one (1) through fifty-seven (57) as though fully set forth here.**

76.     In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

**ANSWER:**     **Defendants admit the allegations in paragraph seventy-six (76).**

77.     The Defendant Officers are or were employees of the City of Highland Park, the Village of Bannockburn, and the Village of Deerfield, and acted within the scope of their employment in committing the misconduct described herein.

**ANSWER:**     **Defendants admit that at all times the Defendant Officers acted within the scope of their employment.**

## COUNT VI

### State Law Claim: Negligence

#### (By Plaintiff against Defendants Officer Gerald Cameron; Officer Philip DeLaurentis; Officer Amy Hyndman; Officer Robert Ogden; Officer John Doe #1; The City Of Highland Park; The Village Of Bannockburn; and The Village Of Deerfield)

78.     Mrs. VanDenburgh re-alleges and incorporates by reference as though fully set forth herein, Paragraphs 1 through 57 above as Paragraph 78 of Count VI.

**ANSWER:** **Defendants incorporate their answers to paragraphs one (1) through fifty-seven (57) as though fully set forth here.**

79.     Defendant Officers owed Mrs. VanDenburgh a duty of care to avoid intentionally causing her personal injury.

**ANSWER:** **Defendants admit only those duties imposed by law.**

80.     Defendant Officers breached that duty of care through their conduct, described above, acting under color of law and within the scope of their employment, by performing unjustified and offensive physical contact with Mrs. VanDenburgh, undertaken willfully and wantonly, and which directly and proximately caused Mrs. VanDenburgh's bodily injuries.

**ANSWER:** **Defendants deny the allegations in paragraph eighty (80).**

81.     The misconduct described above was objectively unreasonable and was undertaken intentionally with willful indifference to Mrs. VanDenburgh's Constitutional rights.

**ANSWER:** **Defendants deny the allegations in paragraph eighty-one (81).**

82.     The misconduct described above was undertaken by the Defendant Officers within the scope of their employment such that their employers, the City of Highland Park, the Village of Bannockburn, and the Village of Deerfield, respectively, are liable for their actions.

**ANSWER:** **Defendants admit that at all times the Defendant Officers acted within the scope of their employment.**

**COUNT VII**

**State Law Claim: Negligence**

**Count VII is not brought against these Defendants.**

**<u>AFFIRMATIVE DEFENSES</u>**

**FIRST AFFIRMATIVE DEFENSE – QUALIFIED IMMUNITY**

1.     Defendants Cameron, DeLaurentis, and Hyndman remain entitled to qualified

immunity because arguable probable cause existed to arrest Plaintiff for violating numerous local

16

ordinances and state laws, including but not limited to, interference with a police officer and criminal trespass to property.

2.      Defendants Cameron, DeLaurentis, and Hyndman remain entitled to qualified immunity on Plaintiff's claim of excessive force because Plaintiff's right to be free from the particularized uses of force they employed to affect her arrest were not clearly established at the time.

### SECOND AFFIRMATIVE DEFENSE – HECK V. HUMPHREY

1.      On October 8, 2014, in the Circuit Court of Lake County, Illinois, Plaintiff was convicted of the offense of interfering with an officer for her conduct in the incident described in the Plaintiff's Complaint.

2.      The conviction remains extant.

3.      The allegations in the Plaintiff's Complaint demonstrate that Plaintiff seeks to collaterally attack the conviction in this action.

4.      Such a collateral attack remains precluded by the United States Supreme Court's decision in *Heck v. Humprey* and its progeny.

### THIRD AFFIRMATIVE DEFENSE – LAW ENFORCEMENT IMMUNITY

1.      Defendants Cameron, DeLaurentis, and Hyndman are public employees within the meaning of the Local Governmental and Governmental Employees Tort Immunity Act.  745 ILCS 10/1-101 et seq.

2.      During the events described in the Plaintiff's Complaint, Defendants Cameron, DeLaurentis, and Hyndman were executing and/or enforcing the laws of the City of Highland Park and the State of Illinois.

17

3.      Section 2-202 of the Tort Immunity Act immunizes negligent acts and/or omissions by Defendants Cameron, DeLaurentis, and Hyndman during the events described in the Complaint.

**FOURTH AFFIRMATIVE DEFENSE – TORT IMMUNITY ACT, SECTION 2-109**

1.      The City of Highland Parks is a local public entity within the meaning of the Local Governmental and Governmental Employees Tort Immunity Act.  745 ILCS 10/1-101 et seq.

2.      During the events described in the Plaintiff's Complaint, all City of Highland Park police officers were executing and/or enforcing the laws of the City of Highland Park and the State of Illinois.

3.      Section 2-202 of the Tort Immunity Act immunizes negligent acts and/or omissions by City of Highland Park police officers during the events described in the Complaint.

4.      Section 2-109 of the Tort Immunity Act immunizes the City of Highland Park for any negligent acts and/or omissions of its police officers during the events described in the Complaint.

**THESE DEFENDANTS DEMAND A TRIAL BY JURY.**

Respectfully submitted by,

/s/ Michael J. Atkus
Michael J. Atkus (#6285666)
KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
Attorneys for Defendants Highland Park Police Officer
Gerald Cameron, Highland Park Police Officer Philip
DeLaurentis, Highland Park Police Officer Amy
Hyndman, and the City of Highland Park
5600 North River Road, Suite 600
Rosemont, Illinois 60018-5114
Telephone:      847/261-0700; FAX:  847/261-0714
E-Mail:          matkus@khkklaw.com

18

## CERTIFICATE OF ELECTRONIC SERVICE

The undersigned, one of the attorneys of record herein, hereby certifies that on September 21, 2015, the foregoing **ANSWER AND AFFIRMATIVE DEFENSES** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System, which will send notification of such filing to the following CM/ECF participants:

Ethan Emery White, ewhite@leonardmeyerllp.com

Maryam H. Arfeen, marfeen@leonardlawoffices.com

Michael Irving Leonard, mleonard@leonardlawoffices.com, mikeleonardlaw@gmail.com

Michael Jude Atkus, matkus@khkklaw.com, tmulligan@khkklaw.com

Phillip Glen Litchfield, litchfieldp@litchfieldcavo.com

Stephen H. DiNolfo, sdinolfo@obkcg.com, eomalley@obkcg.com, eomalley@ottosenbritz.com, sdinolfo@ottosenbritz.com

William W. Kurnik, bkurnik@khkklaw.com, kstocco@khkklaw.com

/s/Michael J. Atkus
Michael J. Atkus (#6285666)


KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
Attorneys for Defendants Highland Park Police Officer Gerald Cameron, Highland Park Police Officer Philip DeLaurentis, Highland Park Police Officer Amy Hyndman, and the City of Highland Park
5600 North River Road, Suite 600
Rosemont, Illinois 60018-5114
Telephone:     847/261-0700
Facsimile:      847/261-0714
E-Mail:          matkus@khkklaw.com

15-09-21 Answer and Aff Defenses 6818