# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LINDA S. VANDENBURGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 6191 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| HIGHLAND PARK POLICE OFFICER ) | |
| GERALD CAMERON; HIGHLAND PARK ) | |
| POLICE OFFICER PHILIP DELAURENTIS; ) | |
| HIGHLAND PARK POLICE OFFICER AMY ) | |
| HYNDMAN; DEERFIELD POLICE OFFICER ) | |
| JOHN DOE #1; HIGHLAND PARK POLICE ) | |
| OFFICER JOHN DOE #2; RAVINIA ) | |
| FESTIVAL ASSOCIATION, an Illinois ) | |
| not-for-profit organization; THE CITY OF ) | |
| HIGHLAND PARK, a Municipal Corporation; ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

After an incident at the Ravinia Music Festival ("Ravinia") resulted in Plaintiff Linda VanDenburgh being charged with interference with a police officer and criminal trespass to property, VanDenburgh filed this suit against Defendants: Highland Park Police Officers Gerald Cameron, Philip DeLaurentis, Amy Hyndman, and John Doe #2 (collectively, but excluding John Doe #2, the "Defendant Officers"); Deerfield Police Officer John Doe #1; Ravinia Festival Association; and the City of Highland Park ("Highland Park").[1] VanDenburgh alleges false arrest and excessive force claims pursuant to 42 U.S.C. § 1983, in addition to state law assault

---

[1] VanDenburgh also brought suit against Robert Ogden, the Village of Bannockburn, and the Village of Deerfield but settled those claims. VanDenburgh has failed to amend her complaint to include the identities of John Doe #1 and John Doe #2. At this point, any claims against those officers are time-barred, and so the Court dismisses the claims against them with prejudice. *See* Doc. 44 at 7–9 (finding that VanDenburgh could not take advantage of Rule 15(c) to amend complaint to name John Doe officers).

and battery and malicious prosecution claims against the Defendant Officers.[2] VanDenburgh also alleges that all Defendants acted negligently. Finally, she asserts an indemnification claim against Highland Park for any tort judgment entered against the Defendant Officers.

Because the Court finds that VanDenburgh's excessive force claim related to the handcuffing process necessarily implies the invalidity of her conviction, *Heck v. Humphrey* bars that aspect of her excessive force claim. But because factual disputes exist concerning the use of force by Cameron and DeLaurentis in using the wheelchair to remove VanDenburgh from the premises, that aspect of her excessive force claim must proceed to trial, as must the assault and battery claim against the Defendant Officers. The Court grants judgment for the Defendant Officers on the malicious prosecution claim, however, finding DeLaurentis had probable cause to issue the citation for criminal trespass to property. Factual questions preclude summary judgment on the negligence claim against Ravinia, although the Court grants judgment for the Defendant Officers on VanDenburgh's negligence claim against them because she does not contest the issue. And because certain claims remain against the Defendant Officers, the indemnification claim against Highland Park remains as well.

---

[2] In addressing certain Defendants' motions to dismiss, the Court dismissed VanDenburgh's false arrest claim without prejudice and limited the malicious prosecution claim to proceedings concerning the criminal trespass to property charge. *See* Doc. 44. Although the Defendant Officers did not participate in the motion to dismiss, the Court extends its dismissal of the false arrest claim to them, particularly given the fact that they so move in their motion for summary judgment and VanDenburgh has failed to address the false arrest claim in her response. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (court may *sua sponte* enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion). Similarly, the Court will only consider the malicious prosecution claim here to the extent it concerns the criminal trespass to property charge.

# BACKGROUND[3]

On July 19, 2014, VanDenburgh and her husband, Mark, attended a Crosby, Stills, and Nash concert at Ravinia, which is located in Highland Park, Illinois. They arrived at Ravinia around 6:00 p.m. and proceeded to the food court, where they ordered food and drinks. VanDenburgh then sat on a curb with the food and drinks while her husband went to the bathroom. A group of men came up to her and sexually harassed and propositioned her. They ultimately left, and her husband returned several minutes later. VanDenburgh told her husband that a group of men had solicited her, thinking she was a prostitute and asking her for a price. She stated she yelled at them and that nobody came to help her. Her husband said they had to do something in response. Around that time, a Ravinia security guard came up to them to tell them that they could not sit on the curb. Mr. VanDenburgh told the security guard that his wife had just been accosted by a group of men and that they wanted to file a report. The security guard told them he would take them to a police officer.

The security guard took the VanDenburghs to Commander Cameron, who was stationed near Ravinia's main gate. Cameron was one of two Highland Park Police Department Supervisors working at Ravinia that night on an extra duty assignment. He reported to Jim Schmitz, Ravinia's Director of Facilities who also oversaw Ravinia's security operations at the time and had final decisionmaking authority concerning security decisions at Ravinia during concerts.[4] VanDenburgh told Cameron that she had just been accosted by a group of men and

---

[3] The facts in this section are derived from the Joint Statements of Undisputed Material Facts. All facts are taken in the light most favorable to VanDenburgh, the non-movant.

[4] Although Schmitz had final decisionmaking over security decisions, Ravinia's security team did not handle criminal complaints or allegations. Ravinia's security team and police officers on duty coordinated their work, with Ravinia providing Cameron and the other outside police supervisor with radios to use that allowed them access to Ravinia's emergency radio channel. Ravinia had approximately

wanted to file a complaint. Cameron asked VanDenburgh if she had gotten their names, and when she indicated she had not, told her he was busy and gave her a card directing her to Ravinia's website. Cameron turned away, and then the VanDenburghs also did, proceeding to walk towards the pavilion, where the concert was about to start. On the way to their seats, the VanDenburghs encountered several Ravinia security guards, to whom they also complained about the incident. The uniform response was that they had to talk to the police. Unbeknownst to the VanDenburghs, Cameron had made a report of their complaint on the Ravinia emergency radio channel and communicated the information directly to Schmitz. Ravinia then broadcast the information to its own security personnel.

Prior to intermission, VanDenburgh noticed a police officer, whom she believed to be Cameron, standing at the end of the row in which she was sitting, staring at her and her husband with his arms folded on several occasions. Around the start of intermission, the Ravinia watch office radioed over the Ravinia emergency channel that Cameron should report to the pavilion, where he encountered security personnel speaking with the VanDenburghs. The VanDenburghs proceeded to go to the bathroom. On their way back to their seats, an officer tapped Mr. VanDenburgh on the shoulder and told him that the VanDenburghs needed to stay in their seats for the rest of the show or else they would have to leave. During the second half of the concert, VanDenburgh noticed four to five police officers and the same number of security officers standing at the end of the row in which she was sitting. These officers moved to monitor the VanDenburghs from behind a wall, although Schmitz remained in front of the wall to make a decision about how to handle the situation. VanDenburgh observed that the police officers had their jackets open with their hands on their guns or tasers. After several minutes, VanDenburgh

---

sixty security officers working events, including the evening of the incident at issue, and also had an on-site security watch office.

4

said to the officers, "[i]f you're going to arrest me, arrest me." Doc. 89 ¶ 30. The VanDenburghs then decided to leave their seats, moving to an area of the pavilion where people were standing and leaning up against a wall. Ultimately, Schmitz determined that VanDenburgh should be removed from the property, and, after conferring with Cameron, the two of them jointly made the decision to use a wheelchair to remove her. A wheelchair had not previously been used to remove an individual from Ravinia in such a manner, and there was no training or established procedure for its use. VanDenburgh testified that as she was leaning against the wall, officers "shoved [her] or grabbed [her] from behind and yanked [her] into a wheelchair really hard." *Id.* ¶ 34. Her legs buckled as she was forced into the wheelchair, and the officers admitted to grabbing her wrist and shoulder areas to force her into and get her to remain in the wheelchair. The officers then wheeled VanDenburgh to an area by the Iris Gate, which took less than half a minute. This is the loading area behind the stage. During this time, VanDenburgh was screaming and complaining that the officers were hurting her. DeLaurentis held VanDenburgh's left arm down while Officer Obrzut held her right arm as she was wheeled to the gate. Schmitz was present the entire time, although he allowed the group to go past him as he held the crowd back.

When everyone arrived at the Iris Gate, the officers tried to lift VanDenburgh out of the wheelchair by her arms and shoulders. VanDenburgh's knees went weak, with VanDenburgh falling to the ground. Cameron then told VanDenburgh she had to leave Ravinia, with Cameron and Schmitz deciding that VanDenburgh would be arrested if she did not leave. But VanDenburgh continued to sit on the ground, testifying she was crying, scared, and afraid the officers would hurt her more. After five to ten minutes passed, Cameron directed Officers DiBasilio and Hyndman to handcuff VanDenburgh. DiBasilio pulled VanDenburgh up by her

5

right arm, with Hyndman holding VanDenburgh's left arm. They got her off the ground and handcuffed her behind her back. In the process, VanDenburgh tore the rotator cuff in her right shoulder. As VanDenburgh was lifted off the ground, she screamed in pain. Once handcuffed, DiBasiolio and Hyndman put VanDenburgh in a squad car.

DeLaurentis issued VanDenburgh two citations in connection with the incident: one for interference with a police officer and a second for criminal trespass to property. The charge of interference with an officer indicated that VanDenburgh "knowingly clenched her extremities in an attempt to stop officers from controlling her while being placed into handcuffs [and] continued to pull away from officers causing officers to lay [VanDenburgh] on her side in the rear of the patrol car." *Id.* ¶ 61. VanDenburgh, however, testified that she did not do so, and Hyndman testified that VanDenburgh briefly tensed her arm, which commonly occurs when people are being handcuffed. The criminal trespass to property charge indicated that VanDenburgh "knowingly refused to leave Ravinia Festival after being told to exit the grounds by supervisor Jim Schmitz [and] then sat on the bus roadway near the pavillion [sic] and refused to leave after said warning." *Id.* ¶ 64. Schmitz signed a no trespass order on behalf of Ravinia, but VanDenburgh only received the order while at the hospital. She was convicted of the charge of interference with an officer but not of criminal trespass to property.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party

6

seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I. Excessive Force Claim (Count II)

The Defendant Officers seek summary judgment on VanDenburgh's excessive force claim, arguing that, pursuant to *Heck v. Humphrey*, VanDenburgh's conviction for interfering with a police officer bars the claim. *See Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) (plaintiffs cannot use § 1983 to collaterally attack an otherwise valid criminal conviction). But *Heck* does not necessarily bar all excessive force claims arising during the course of an arrest; finding otherwise would "imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (quoting *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006)). The Defendant Officers argue that VanDenburgh may proceed on her excessive force claim only to the extent that the facts underlying that claim "are not inconsistent with the essential facts supporting the conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014). To determine whether *Heck* bars a

7

claim, the Court "must consider the factual basis of the claim and determine whether it necessarily implies the invalidity of [VanDenburgh's] conviction." *Id.*

Here, the citation VanDenburgh received for interfering with an officer, for which she was convicted, set forth that she "knowingly clenched her extremities in an attempt to stop officers from controlling her while being placed into handcuffs." Doc. 89 ¶ 61. The Highland Park Ordinance for interfering with an officer requires knowing resistance or obstruction of the performance of a peace officer's authorized actions. *See* Highland Park Ordinance § 130.015 ("Interference with public officers: A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity shall be guilty of resisting or obstructing a public officer."). But VanDenburgh continues to deny that she ever clenched her extremities in an attempt to stop the Defendant Officers, and other officers, from controlling her while being placed in handcuffs. Thus, VanDenburgh's version of her handcuffing implies the invalidity of her conviction. *See Tolliver v. City of Chicago*, 820 F.3d 237, 243 (7th Cir. 2016) (finding that plaintiff's version of shooting implied invalidity of his conviction for aggravated battery of a peace officer where there was no "acknowledgment of the mental state necessary for a conviction for aggravated battery"). Although VanDenburgh disclaims any intention of challenging her conviction, because she continues to take positions that necessarily imply the invalidity of her conviction instead of, for example, remaining agnostic about the issue, *Heck* bars her excessive force claims to the extent they involve the handcuffing process. *See id.* at 244 (finding excessive force claim barred where plaintiff was the "master of his ground" and made allegations inconsistent with his conviction); *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (finding plaintiff could not maintain claim for unconstitutional search and seizure alleging he had been trying to sell gems, not drugs,

and so had been framed, where he had been convicted of selling drugs to an undercover officer); *cf. Gilbert v. Cook*, 512 F.3d 899, 902 (7th Cir. 2008) ("An argument along the lines of 'The guards violated my rights by injuring me, whether or not I struck first' does not present the sort of inconsistency that [requires application of the *Heck* doctrine].").

The *Heck* doctrine does not, however, bar VanDenburgh's excessive force claims surrounding the Defendant Officers' use of force in removing her from the pavilion by wheelchair and keeping her in the wheelchair as they took her to the Iris Gate. VanDenburgh does not argue that Hyndman had any involvement in this action, and so the Court grants judgment for Hyndman on these claims. As for Cameron and DeLaurentis, however, the Court finds factual questions prevent the Court from granting summary judgment on the claim.

Cameron and DeLaurentis argue that their actions were reasonable or, alternatively, that qualified immunity protects them. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (citation omitted) (internal quotation marks omitted). "[T]wo central questions must be addressed in the course of determining whether qualified immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted). The Fourth Amendment's prohibition on unreasonable seizures limits an officer's use of force during an arrest, and the Court reviews the totality of the circumstances and "engage[s] in 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Weinmann v. McClone*, 787 F.3d 444, 448 (7th

9

Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). When balancing these competing factors, the Court considers "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). The Court evaluates reasonableness from the "perspective of a reasonable officer on the scene" and not with "20/20" hindsight. *Graham*, 490 U.S. at 396. "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012).

Here, balancing the competing factors and reviewing the totality of the circumstances requires factual determinations that preclude the Court from ruling as a matter of law on the constitutionality of Cameron's and DeLaurentis' actions. The facts before the Court create rival versions of the incident, leaving the Court unclear as to what actually occurred on July 19, 2014 to cause the escalation of events leading to this lawsuit. VanDenburgh alleges that the force Cameron and DeLaurentis used in putting her in the wheelchair and keeping her there was unreasonable in light of the totality of the circumstances because she claims she posed no threat and was merely attempting to enjoy the concert. She contends that Cameron and DeLaurentis did not attempt other options of removing her from the premises, such as asking her to walk off the premises of her own volition, and instead decided to use a new method involving the wheelchair, for which none of the officers had any training and which had never been used at Ravinia or by Cameron or DeLaurentis before. VanDenburgh also points to the fact that DeLaurentis and Cameron admit that their use of force in using the wheelchair could have

10

caused some of her injuries. On the other hand, Cameron and DeLaurentis contend that their actions were reasonable in light of the situation, with VanDenburgh having shown contempt to them by leaving her seat and moving toward the stage and yelling to them that they should go ahead and arrest her. They also maintain that any force used was *de minimis*.

Because VanDenburgh's version of the facts reasonably lays out a constitutional violation and Cameron and DeLaurentis' does not, the competing narratives prevent the Court from accurately judging the totality of the circumstances and require the issue to be submitted to a jury. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) ("[S]ummary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations."). And because there are jury questions about the nature of VanDenburgh's resistance and the degree of force used, the Court cannot resolve the qualified immunity question in favor of Cameron and DeLaurentis. *See Weinmann*, 787 F.3d at 451 ("The existence of a factual dispute about the circumstances surrounding McClone's decision to fire on Jerome precludes a ruling on qualified immunity at this point."); *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008) (factual disputes concerning the degree to which suspect became agitated and threatening in speaking to officer and whether suspect made physical contact with officer prevented summary judgment on qualified immunity grounds). Therefore, this aspect of VanDenburgh's excessive force claim must proceed to trial.

## II. Malicious Prosecution Claim (Count IV)

The Defendant Officers also seek summary judgment on VanDenburgh's malicious prosecution claim, which is limited to the criminal trespass to property charge for which she was found not guilty. *See* Doc. 44 at 14. A malicious prosecution claim requires that VanDenburgh establish: "(1) the commencement or continuation of an original criminal or civil judicial

11

proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011). For purposes of a malicious prosecution claim, probable cause is defined as "a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013) (citation omitted). Whether there was probable cause for the prosecution is determined as of when the charging document was filed, not at the time of arrest. *Id.*

Initially, Cameron and Hyndman seek summary judgment on this claim, arguing that there is no evidence that they commenced or continued any proceedings against VanDenburgh. *See Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) ("Illinois law requires that, in order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or 'his participation in it must have been of so active and positive a character as to amount to advice and cooperation.'" (citation omitted)); *Davis v. Fenimore*, No. 09 CV 939, 2010 WL 1489988, at *4 (N.D. Ill. Apr. 13, 2010) (in arguing that police officer "played a significant role in causing the prosecution of the plaintiff . . . . a plaintiff must show that the officer used improper influence on the prosecutor or made knowing misstatements to the prosecutor in order to secure prosecution" (citations omitted) (internal quotation marks omitted)). VanDenburgh does not respond to this argument, only arguing as to why her claim for malicious prosecution against DeLaurentis should proceed. The Court treats this as an effective concession of her claims against Cameron and Hyndman and grants summary judgment in their favor. *See*

*Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

DeLaurentis argues that VanDenburgh's claim fails because she cannot establish the absence of probable cause to prosecute her for violating Highland Park Ordinance 131.035. That section provides that "[i]t shall be unlawful to enter upon the land or any part thereof of another, after receiving immediately prior to such entry, notice from the owner or occupant that such entry is forbidden, or remains upon the land of another after receiving notice from the owner or occupant to depart." Highland Park Ordinance § 130.015(A). "A person has received notice from the owner or occupant . . . if he has been notified personally, either orally or in writing, or if a printed or written notice forbidding such entry has been conspicuously posted or exhibited at the main entrance to such land or the forbidden part thereof." *Id.* § 130.015(B). The facts in the record establish that Schmitz, on behalf of Ravinia, determined that VanDenburgh needed to leave Ravinia's property. Thereafter, he communicated this information to Cameron, who informed VanDenburgh. Although VanDenburgh only received written notice of trespass upon arriving at the hospital, DeLaurentis had probable cause to issue the citation for criminal trespass to property based on the verbal commands to depart she received while still on Ravinia's property. *See Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) (officers had probable cause to arrest plaintiff for criminal trespass where they were told by property's manager that he wanted plaintiff to leave, the officers asked plaintiff to leave, and she refused). Therefore, the Court grants summary judgment for DeLaurentis on VanDenburgh's malicious prosecution claim.

### III. Assault and Battery and Negligence Claims against the Defendant Officers and Highland Park (Counts III and VI)

The Defendant Officers contend that § 2-202 of the Illinois Tort Immunity Act ("TIA"), 745 Ill. Comp. Stat. 10/2-202, bars VanDenburgh's state law claims against them.[5] Highland Park contends that § 2-109 protects it as well, providing that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 Ill. Comp. Stat. 10/2-109. Section 2-202 provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202. "Willful and wanton conduct" is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 Ill. Comp. Stat. 10/1-210. "Although willful and wanton conduct consists of more than mere inadvertence, incompetence, or unskillfulness, it need not be an intentional act; rather, it may be an act committed under circumstances exhibiting a reckless disregard for the safety of others." *Chelios*, 520 F.3d at 693 (quoting *Carter v. Chicago Police Officers*, 165 F.3d 1071, 1081 (7th Cir. 1998) (internal quotation marks omitted).

The Defendant Officers argue that even though they intentionally touched VanDenburgh, their actions were not willful and wanton because there is no evidence that they acted without legal justification or unreasonably under the Fourth Amendment. But, as the Court noted with respect to the excessive force claim involving the use of the wheelchair, fact issues preclude the Court from making such a determination at the summary judgment stage. The record indicates

---

[5] In response, VanDenburgh only mentions the assault and battery claim against the Defendant Officers and Highland Park, failing to address the negligence claim. Although the arguments the Defendant Officers and Highland Park made apply equally to the assault and battery and negligence claims, in failing to mention the negligence claim, the Court concludes that VanDenburgh does not intend to pursue her negligence claim against these parties and enters judgment on that claim for them. *See Bonte*, 624 F.3d at 466.

14

that the Defendant Officers acknowledge that their actions in using the wheelchair may have caused some of VanDenburgh's injuries and the jury could conclude from the evidence before the Court that the Defendant Officers' conduct exhibited a reckless disregard for VanDenburgh's safety. *Id.* Therefore, the Court finds that VanDenburgh's assault and battery claim against the Defendant Officers and Highland Park must proceed to trial.

## IV. Indemnification Claim (Count V)

Highland Park argues that it is entitled to summary judgment on VanDenburgh's indemnification claim because all the claims against the Defendant Officers fail. But because the Court has found questions of fact on certain of VanDenburgh's claims against these Defendant Officers, the Court cannot enter judgment on the indemnification claim at this time.

## V. Negligence Claim against Ravinia (Count VII)

Finally, Ravinia seeks summary judgment on VanDenburgh's negligence claim against it. To succeed on her negligence claim, VanDenburgh must establish that (1) Ravinia owed VanDenburgh a duty, (2) Ravinia breached that duty, and (3) Ravinia's breach proximately caused VanDenburgh injury. *Rhodes v. Ill. Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267, 172 Ill. 2d 213, 216 Ill. Dec. 703 (1996). Ravinia argues that it did not owe VanDenburgh any duty under the circumstances. Specifically, Ravinia argues that it had no obligation to protect VanDenburgh from the actions of the on-duty police officers during the performance of their duties.

Typically, "a party owes no duty of care to protect another from the harmful or criminal acts of third persons." *Petersen v. U.S. Reduction Co.*, 641 N.E.2d 845, 848, 267 Ill. App. 3d 775, 204 Ill. Dec. 415 (1994). But courts recognize an exception where a special relationship exists between the parties. *Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1186–87, 195 Ill. 2d 210, 253 Ill. Dec. 632 (2000). One of the special relationships recognized by courts is

that of a business invitor and invitee, applicable in this case to Ravinia's relationship with VanDenburgh. *See Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1058, 222 Ill. 2d 422, 305 Ill. Dec. 897 (2006). But in addition to the existence of a special relationship, "it must also be shown that the criminal attack [or harmful action] was reasonably foreseeable." *Hills*, 745 N.E.2d at 1187. "[G]enerally stated, it is the nature of the business which the landholder conducts on his premises that determines whether the business stands in a special relationship with its customers that may impose a duty to provide security or protection from third-party attacks." *Id.* at 1188. Here, the fact that Ravinia had security personnel and officers from surrounding police departments present at its events suggests that Ravinia could reasonably foresee that invitees would be placed at risk of criminal attack or have other security-related problems while on its premises. Therefore, the Court finds that Ravinia owed VanDenburgh a duty of care.

Ravinia nonetheless argues that it had no control over the police officers involved here because they were not employed by Ravinia and instead were performing extra duty assignments for their respective police departments. But the facts on this issue are subject to debate, as Cameron indicated that he used a Ravinia controlled radio and reported to Schmitz and coordinated with Schmitz while working Ravinia events. Ravinia also argues that even if it had a duty, any breach could not have proximately caused VanDenburgh's injuries because there is no evidence that any Ravinia employees or representatives physically touched VanDenburgh or instructed the officers on how to remove VanDenburgh from the premises. These questions must be left for the jury, where the record reflects that Cameron and Schmitz together decided to use the wheelchair to remove VanDenburgh. *See Swearingen v. Momentive Specialty Chems., Inc.*, 662 F.3d 969, 972 (7th Cir. 2011) ("[B]reach of duty and proximate cause present questions of

fact."). Ravinia also argues that VanDenburgh's injuries were caused by her own resistance, but this is belied by the record, where some of the Defendant Officers admitted that their actions could have contributed to her injuries. Thus, the Court denies Ravinia's motion for summary judgment on the negligence claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Highland Park and the Defendant Officers' motion for summary judgment [87] and denies Ravinia's motion for summary judgment [90]. The Court grants judgment for Cameron, DeLaurentis, and Hyndman on the false arrest claim (Count I), the excessive force claim related to her handcuffing (Count II), the malicious prosecution claim (Count III), and the negligence claim (Count VI). The Court also grants judgment for Highland Park on the negligence claim (Count VI) and for Hyndman on the remaining portions of the excessive force claim (Count II) as well. The Court dismisses the claims against John Doe #1 and John Doe #2 with prejudice.

Dated: October 17, 2017

SARA L. ELLIS  
United States District Judge