**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LINDA S. VANDENBURGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 15 C 6191** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **BANNOCKBURN POLICE** | ) | **Maria Valdez** |
| **OFFICER ROBERT OGDEN and** | ) | |
| **RAVINIA FESTIVAL** | ) | |
| **ASSOCATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Maria Valdez, Magistrate Judge

This case arises out of personal injury action filed by the plaintiff, Linda VanDenburgh, alleging she sustained a torn rotator cuff while being forcibly removed from Defendant Ravinia Festival Association's ("Ravinia") premises by the co-defendant police officers.

Pending before the District Court is Ravinia's motion alleging that it entered into an enforceable settlement agreement with Plaintiff. A hearing was held on March 22, 2018 in front of this Court to address the motion. Post-hearing briefs have been submitted by both sides. For the reasons that follow, the Court believes that Ravinia has established that the parties reached an agreement regarding settlement of this case. Accordingly, the Court respectfully recommends that the Motion to Enforce Settlement and for Good Faith Finding [Doc. No. 109] be granted.

## BACKGROUND

This case was referred to this Court on October 19, 2016 for the purpose of conducting a settlement conference. The Court held a settlement conference on January 31, 2017 at which a settlement in principal was reached with co-defendant Deerfield, but not with Ravinia. Following the Court-supervised settlement conference, Plaintiff and Ravinia continued their settlement discussions via email communications. During their correspondence, which resumed in November 2017, the parties exchanged updated settlement positions based on a dollar values. On December 11, 2017, Ravinia's counsel sent the following email to Plaintiff's counsel:

> Mike-
> I spoke to my client, reluctantly, she agreed to increase our max authority to $25,000. I can get you a release as soon as possible for that amount, and likely a check fairly soon as well.
> Alan

*Def.'s Post-Evidentiary Hearing Brief*, Ex. A, Transcript of Proceedings, 14:4–13. In response, on December 12, 2017, Plaintiff's counsel said:

> Ok. We have an agreement at 25K, obviously subject to a suitable release/settlement agreement. Can you provide a draft? Thanks, Mike.

*Id*. at 14:14–22. On December 13, 2017, Ravinia's counsel sent the following email:

> Mike []–
> Attached is a proposed joint motion for good faith finding that we'd like to get on file, along with the proposed release. Please let me know if I have your go-ahead to file the joint motion as drafted with the release as an attachment.
> Thanks, Phil

*Id*. at 17:2–13. Plaintiff's counsel replied "Agreed. Thanks." *Id*. at 18:5–7. Later that same day, Plaintiff's counsel sent another email to Ravinia's counsel which stated

2

"Alan – to be clear, our client is not and never has agreed to any bar from Ravinia. Mike." *Id*. at 23:16–20. Ravinia's counsel responded "Mike – not sure what you are referring to here. A 'bar' as in being blacklisted from attending future Ravinia events? If that is the case, frankly I have no idea if that is something that even exists. I can and will inquire of my client as to whether there is such a thing and if so, if you [sic] client is listed there." *Pl.'s Resp.* at 3. Plaintiff's counsel then replied "Agreed. But also agreed no such bar is part of your agreement. But, if they are seeking to still bar her going forward, we have no agreement. Thanks." *Def.'s Post-Evidentiary Hearing Brief*, Ex. A, Transcript of Proceedings, at 45:17–46:1.

Following this exchange, Ravinia's counsel contacted the Director of Operations, James Schmitz, at Ravinia regarding the no-trespass bar. *Id*. at 31:2–21. Mr. Schmitz informed Ravinia's counsel that Plaintiff was on a list of persons who would be precluded from purchasing tickets to Ravinia events either online or on the telephone. *Id*. at 32:10–18. Ravinia's counsel testified that prior to December 13, 2017, he was unaware that a list which prohibited persons from purchasing tickets online or on the phone existed. *Id*. at 45:13–16. Later in the evidentiary hearing it came to light that on the night of the event at issue, Plaintiff received a no-trespass order from Ravinia, signed by Mr. Schmitz, which prohibited her from entering the premises. *Id*. at 33:9–19; 36:9–20. Ravinia informed Plaintiff of this bar against her in a criminal proceeding related to the events at issue. *Id*. at 58:23–59:6. In her deposition, Plaintiff acknowledged that she was aware of the ban. *Pl.'s Resp.* at Ex. 2, Deposition of Linda S. VanDenburgh, at 175:16–22. On December

15th, 2017, Ravinia's counsel confirmed the ban in an email to Plaintiff's counsel which stated "There is a no trespass order, and she is on a list precluded [sic] her purchasing tickets, according to my client." *Def.'s Post-Evidentiary Hearing Brief*, Ex. A, Transcript of Proceedings, at 47:21–48:2.

## LEGAL STANDARD

A court's decision whether to enforce a settlement agreement is reviewed under the deferential abuse of discretion standard. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007); *see Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996).

The enforceability of a settlement agreement, like any contract, is governed by local state law. *Carr*, 89 F.3d at 331. Under Illinois law, a settlement agreement is enforceable if there is an offer, acceptance, and a meeting of the minds as to the agreement's terms. *Dillard.*, 483 F.3d at 507. "Whether a 'meeting of the minds' occurred depends on the parties' objective conduct, not their subjective beliefs." *Id.*; *see also Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008) (explaining that under Illinois law's objective theory of intent, the parties' "[s]ecret hopes and wishes count for nothing. The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves") (citation and internal quotations omitted). In order to prevail on a motion to enforce settlement, the moving party has the burden of establishing existence of elements of an enforceable settlement agreement. *Hyde Park Union*

4

*Church v. Curry*, 942 F. Supp. 360, 363–64 (N.D. Ill. May 29, 1996) (citing *Schapp v. Executive Industries, Inc.*, 706 F. Supp. 725, 726 (N.D. Ill. 1991).

## ANALYSIS

The primary dispute between the parties in this case concerns a bar whereby Plaintiff is prohibited from entering Ravinia or purchasing tickets to Ravinia events in the future.[1] Plaintiff contends that she and Ravinia reached agreement on a monetary settlement amount, but had yet to discuss, much less agree upon, the material terms of the parties' settlement. In contrast, Ravinia argues that a binding settlement agreement was reached between the parties on December 12, 2017 which did not include a material term related to Plaintiff's no-trespass bar.

Ravinia seeks an order: (1) enforcing the settlement reached in this case between Plaintiff and itself on December 12, 2017; (2) finding that the settlement reached between the two parties was made in good faith pursuant to Section 2(d) of the Joint Tortfeasor Contribution Act; (3) finding that settlement was fair and reasonable as required by Section 2(d) of the Joint Tortfeasor Contribution Act; and (4) dismissing, with prejudice and without costs, any and all claims against Defendant Ravinia, but providing that this action shall remain pending as against all other defendants, and that the settlement and associated good faith finding by the Court shall not affect Plaintiff's claims against any other defendants.

---

[1] The Court uses the terms "blacklist" and "no trespass bar" interchangeably to refer to these bans, as do the parties.

Plaintiff argues that the parties had yet to reach agreement on the terms that were material to the settlement, namely, whether Plaintiff would be barred from attending Ravinia events in the future. *Pl.'s Resp.* at 1; *Pl.'s Post-Hearing Submission*, at 5 ("Thus, the issue of whether, and to what extent, Plaintiff will be blacklisted *still* remains to be negotiated and agreed upon by the parties.") (emphasis in original). At the hearing, Plaintiff's counsel explained that Plaintiff would not enter into a settlement agreement unless it included, among other things, a provision lifting the blacklist. *Def.'s Post-Evidentiary Hearing Brief*, Ex. A, Transcript of Proceedings, 25:3–16 (stating in part that "[a] settlement would have to include . . . not being blacklisted.") Accordingly, Plaintiff asks this Court to deny Ravinia's motion to enforce because there has not been an agreement upon all the material terms of the settlement agreement.

## I. Settlement

### A. Material Terms

To begin, Plaintiff argues that there was not yet been a "meeting of the minds" as to the material terms of the settlement agreement, rendering it unenforceable. Plaintiff is correct that there must be a "meeting of the minds" for a settlement to be enforceable, *Elustra v. Mineo*, 595 F.3d 699, 708 (7th Cir. 2010) ("Under Illinois law, a settlement is valid if there is an offer, acceptance, and a meeting of the minds"), but, an unresolved immaterial term does not justify backing out of an agreement. *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997 (7th Cir. 2001)

("lack of agreement on minor, immaterial terms . . . do not preclude a finding that a contract has been formed.") The mere fact that parties disagree on whether a certain provision should have been included in their written agreement does not make the issue material. *Dillard*, 483 F.3d at 508 ("The materiality of additional written terms introduced after an . . . agreement is reached is not established simply by one party's intransigence or 'refusal to budge' on the new terms."); *Robin v. Robin*, No. 02 C 8181, 2004 WL 1381131, at *4 (N.D. Ill. May 7, 2004) ("Contract terms cannot be based on the thoughts of one of the contracting parties that were never communicated to the other.") In fact, "because a settlement agreement is a limitation on the rights of the parties, any such limitation must be discussed and agreed to by the parties for that term to be an enforceable part of that agreement." *See Dhaliwal v. Woods Div., Hesston Corp.*, 1990 WL 53163, at *4 (N.D. Ill. Apr. 12, 1990), *aff'd*, 930 F.2d 547 (7th Cir. 1991), and *aff'd*, 931 F.2d 58 (7th Cir. 1991).

Here, Plaintiff has failed to prove that the blacklist issue was a material term to this settlement agreement. For starters, Plaintiff never specified during the parties' settlement efforts that her acceptance was contingent on her removal from the blacklist. In fact, the emails exchanged between the parties indicate no terms of settlement other than a release of Plaintiff's claims against Ravinia for a dollar amount.

Moreover, after the parties reached a monetary agreement, Ravinia sought to file a joint motion of settlement before the Court. The motion included a draft settlement release which contained no term or provision regarding the blacklist

issue, but Plaintiff's counsel nonetheless agreed to its filing. Based on this conduct, it would objectively appear that the parties intended to be bound in full by the terms contained in the draft settlement release and that the terms in the draft release encompassed all the material terms. *TRT Transp., Inc. v. Aksoy*, 506 F. App'x 511, 513 (7th Cir. 2013) ("To determine whether a 'meeting of the minds' occurred, Illinois courts measure the parties' intent objectively, considering their words and conduct but not their subjective beliefs.") (citation omitted).

This concept of materiality is guided by the Seventh Circuit's decision in *Dillard*, where, the court made clear that a material term is one that has been actively discuss by the parties during relevant settlement negotiations. 483 F.3d at 507–08. In *Dillard*, the parties had orally agreed to a settlement in which the defendant would pay the plaintiff a certain amount of money and reinstate the plaintiff's employment. *Id.* 504–05. Later, the plaintiff objected to the characterization of his reemployment in the draft agreement. *Id.* at 505. The plaintiff argued that the oral agreement was not final because the parties had continued to negotiate other material terms, through further exchanges of drafts. The court disagreed noting that the plaintiff's insertion of the new term "was not even mentioned during the parties' oral negotiations." *Id.* at 507–08.

Similarly, the demand to remove Plaintiff from the blacklist came at the eleventh hour. It was not until after Plaintiff agreed to file with the Court the motion and draft agreement enclosed in Ravinia's December 13, 2017 email, which contained no blacklist term, that Plaintiff brought up the issue for the first time.

8

Thus, this Court respectfully believes that the no-trespass bar was not a material term.

Plaintiff contends that it is beneficial to her argument that she raised the issue of the no-trespass bar for the first time after the parties reached a monetary agreement. Like the plaintiff in *Dillard*, here, Plaintiff also asserts that this evidence indicates that blacklist term of the settlement was still subject to negotiation. But, as stated previously, this argument is inapposite to the findings of courts in similar circumstances. *See Robin v. Robin*, No. 02 C 8181, 2004 WL 1381131, at *4 (N.D. Ill. May 7, 2004) (finding that the plaintiff's arguments that an agreement was reached only in principle and that there was no meeting of the minds on the issues the plaintiff belatedly raised were without merit) (citation omitted). Accordingly, the Court respectfully recommends that the District Court find in Ravinia's favor on this point.

### B. Settlement Authority

Second, Plaintiff's counsel argues that Ravinia's motion to enforce should be denied because he did not have the authority to agree to the terms of a settlement agreement beyond the mere monetary amount to be paid by Ravinia. Thus, Plaintiff's counsel argues, he did not have the authority to bind her to the terms contained in the proposed settlement release.

Even if Plaintiff's counsel did not have express authority to bind her to any non-monetary terms of a settlement agreement, he had apparent authority.

There is a "'longstanding legal presumption' that an attorney has the authority to act on behalf of the client he represents." *Bradford v. Denny's Inc.*, No. 97 C1531, 1998 WL 312009, at *4 (N.D. Ill. June 4, 1998) (citation omitted). Here, Plaintiff's counsel has provided no evidence to overcome this presumption.

Furthermore, apparent authority may be sufficient to bind a litigant. *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000). Plaintiff's counsel was continually involved in the negotiating process, both with and without the Court's mediation assistance, projecting the apparent authority to bind his client to a settlement agreement. *RS&P/WC Fields Ltd. Partnership v. BOSP Investments*, 829 F. Supp. 928, 969 (N.D. Ill. July 30, 1993) ("All of the[] individuals, who were involved throughout the negotiating process, easily had, at minimum, apparent, if not actual, authority to execute and negotiate the agreements.") Accordingly, the Court respectfully recommends that the District Court reject Plaintiff's argument on this point.

Finally, Plaintiff's counsel contends that the motion should be denied because his December 13, 2017 email, where he replied "Agreed. Thanks." only meant that he agreed to the filing of the joint motion for a good faith finding of settlement, not that his client agreed to the terms of the draft settlement agreement. The Court recommends that the District Court also reject this argument.

As support for his argument, Plaintiff's counsel points to his December 12, 2017 email which stated that any settlement was "obviously subject to a suitable release/settlement agreement." But, following this email, Ravinia's counsel provided

a copy of a draft settlement agreement, asking whether it would be suitable to file "as drafted" with the Court.[2] Plaintiff's counsel said it would despite the fact that it did not contain a blacklist provision which Plaintiff now claims is material term. In other words, Plaintiff's counsel represented to the Court that Ravinia could file a document which would allow the Court to dismiss the case with prejudice, but now wishes not to be bound by that document. The Court does find any merit to this argument.

In sum, the Court recommends that any purported term relating to the bar or blacklisting of the Plaintiff from Ravinia which was sought to be added to a formal settlement agreement after the monetary amount and releases where agreed to on December 12, 2017 be excluded on the grounds that it was not discussed during oral settlement negotiations. *See Conway v. Done Rite Recovery Services, Inc.*, No. 14 C 5182, 2016 WL 6804572, at *4 (N.D. Ill. Nov. 17, 2016) (granting Defendant's motion to enforce the settlement agreement but not enforcing any new terms add to the formal settlement that were not contained in the parties' email correspondence).

## II. Joint Tortfeasor Contribution Act

Ravinia also seeks an order finding that the settlement agreement between the parties was fair, reasonable, and in good faith under the Joint Tortfeasor

---

[2] Ravinia's December 13, 2017 email is as follows:
> Mike []–
> Attached is a proposed joint motion for good faith finding that we'd like to get on file, along with the proposed release. Please let me know if I have your go-ahead to file the joint motion *as drafted* with the release as an attachment.
> Thanks,
> Phil

*Def.'s Reply*, Ex. 5. (emphasis added)

Contribution Act. 740 ILCS 100/0.01, *et seq*. The Court respectfully recommends that the District Court grant Ravinia's request.

The Illinois Supreme Court has held that a settlement is not in good faith if: "(1) the settling parties engaged in wrongful conduct, collusion, or fraud; or (2) the settlement conflicts with the terms of the Act or is inconsistent with the policies underlying the Act." *LaJuenesse v. Ford Motor Co.*, 642 F.Supp.2d 835, 838 (N.D.Ill.2009) (citation omitted). The main public policies promoted by the Act are: "the encouragement of settlements and the equitable apportionment of damages among tortfeasors." *Johnson v. United States*, 784 N.E.2d 812, 821 (N.D. Ill. Jan. 24, 2003).

Neither party has objected to the settlement on the grounds of alleged fraud, wrongful conduct, inadequacy of monetary consideration, or any other bad faith reason. Although this is not dispositive of the good faith issue, it is a relevant factor. The Court, being familiar with the facts of the case, the merits of the arguments, and the risks involved with proceeding to trial, believes the District Court should find that this settlement agreement was in good faith, as well as fair and reasonable, under the Joint Tortfeasor Contribution Act. In addition, the Court recommends that the District Court dismiss with prejudice and without costs, any and all of Plaintiff's claims against Ravinia, but that the action shall remain pending as against all other defendants, and that the settlement and associated good faith finding by the Court shall not affect Plaintiff's claims against any other defendants.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Ravinia's Motion to Enforce Settlement and for Good Faith Finding [Doc. No. 109] be granted.

The parties have fourteen days from the date of service of this Report and Recommendation to file objections with the District Court. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. 636(b)(1). Failure to object to this Report and Recommendation constitutes a waiver of the right to appeal. *Tumminaro v. Astrue*, 671 F.3d. 629, 633 (7th Cir. 2011).

**SO ORDERED.**                                      **ENTERED:**

**DATE:**    **June 27, 2018**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**