UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA S. VANDENBURGH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| Bannockburn Police Officer ROBERT OGDEN; Highland Park Police Officer GERALD CAMERON; Highland Park Police Officer PHILIP DELAURENTIS; Highland Park Police Officer AMY HYNDMAN; Deerfield Police Officer JOHN DOE #1; Highland Park Police Officer JOHN DOE #2; RAVINIA FESTIVAL ASSOCATION, an Illinois Not-For-Profit Organization; THE CITY OF HIGHLAND PARK, a Municipal Corporation; THE VILLAGE OF BANNOCKBURN, a Municipal Corporation; and THE VILLAGE OF DEERFIELD, a Municipal Corporation, | ) ) No.: 1:15-CV-06191 ) ) ) ) ) ) Judge Sara L. Ellis ) Magistrate Judge Maria Valdez ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE VALDEZ'S REPORT AND RECOMMENDATION REGARDING DEFENDANT RAVINIA'S MOTION TO ENFORCE PURPORTED SETTLEMENT AGREEMENT**

Plaintiff, Linda Vandenburgh, by and through her undersigned counsel, respectfully submits the following Objections to the Magistrate's June 27, 2018 Report and Recommendation ("Recommendation") regarding Ravinia Festival Association's ("Ravinia") Motion to Enforce Settlement Agreement ("Motion"):

1

**ARGUMENT**

### A. The Recommendation Should Be Rejected Because Ravinia *Admits* That Important Material Terms Of A Settlement Agreement *Still* Remain To Be Negotiated And Agreed Upon By And Between The Parties

The Magistrate concluded that no material terms remained to be negotiated between the parties. In so finding, the Magistrate focused on just one issue with respect to alleged remaining material terms, i.e., the "blacklist issue." Thus, the Magistrate simply completely ignored the other undisputed record evidence, including the testimony of Ravinia's own counsel, that establishes conclusively that significant other material terms remain to be negotiated and agreed upon. In any event, based upon the undisputed record evidence, the Magistrate also erred with respect to the finding that the "blacklist" issue is not a material term.

*The Other Material Terms Issue (Non-Blacklist Issues)*

At the evidentiary hearing before the Magistrate, Ravinia proffered the testimony of its own counsel – as called as an adverse witness by Plaintiff's counsel. Ravinia's counsel <u>admitted</u> that important material terms of the parties' purported settlement agreement *still* remain to be negotiated and agreed upon.

For example, Ravinia's counsel testified that the draft settlement agreement he provided to Plaintiff's counsel (and which he filed with this Court) did *not* contain any "confidentiality" provision. *See* March 22, 2018 hearing transcript, previously submitted by Plaintiff's counsel and attached to Plaintiff's Post-Hearing submission to the Magistrate (Dkt. No. 131, at Exhibit 1), at p. 49:5-25. Ravinia's counsel <u>admitted</u> that it is, and was, an "important" material term. *Id.* at p. 50:1-3. Accordingly, Ravinia's counsel <u>admitted</u> that his client, Ravinia, would only agree to a settlement agreement between the parties if a "finalized" version of it specifically

included a mutually agreed upon confidentiality provision – which does not yet exist, and which has never been negotiated or agreed upon. *Id.* at p. 56:1-5.

Nevertheless, the Magistrate not only completely ignored and overlooked these undisputed facts, the Magistrate made no mention whatsoever of them in the Recommendation. For that reason alone, the Recommendation is not only in error, it is directly contrary to the record evidence.

Perhaps even more significantly, Ravinia's counsel further <u>admitted</u> that the settlement agreement that is the subject of Ravinia's Motion to Enforce is merely a "draft release." *Id.* at p. 51:24-25. Thus, incredibly, Ravinia's counsel <u>admitted</u> that the settlement agreement that is the subject of Ravinia's Motion to Enforce is *not* final. *Id.* at p. 52:1-2. Indeed, Ravinia's counsel admitted that the settlement agreement that Ravinia seeks to enforce is actually still "subject to negotiation." *Id.* at p. 52:3-4.

However, once again, the Magistrate nevertheless not only completely ignored and overlooked these undisputed facts, the Magistrate made no mention whatsoever of them in the Recommendation. For that additional reason, the Recommendation is not only in error, it is directly contrary to the record evidence.

Even if all of the foregoing admissions had not been made by Ravinia and its counsel, there are several additional reasons that support this Court rejecting the Recommendation and finding that it is in error.

Here, Ravinia's counsel further testified and admitted that a "non-disparagement" provision is yet another significant material term that is similarly *not* in the parties' draft settlement agreement. *Id.* at p. 56:12-25. Because of the absence of such a provision in the

3

draft, Ravinia's counsel testified and admitted that he did not even know whether his client, Ravinia, would go forward with a settlement/settlement agreement with the Plaintiff without such a non-disparagement provision as part of the deal and agreement between the parties. *Id.* In addition, Ravinia's counsel testified that he has yet to even discuss that issue with his client, and obtain his client's position with regard to that issue. *Id.*

Nonetheless, once again, the Magistrate not only completely ignored and overlooked these undisputed facts, the Magistrate made no mention whatsoever of them in the Recommendation. For that additional reason, the Recommendation is not only in error, it is directly contrary to the record evidence.

Furthermore, the draft settlement agreement contains an extensive "indemnification provision" pursuant to which the Plaintiff is asked to indemnify Ravinia. *Id.* at p. 64:10-16. Ravinia's counsel admitted that such a provision, i.e., an indemnification provision of any kind, was never discussed by and between Ravinia's counsel and Plaintiff's counsel at any time during the settlement negotiations. *Id.* at p. 10-16. It is similarly undisputed that neither Plaintiff Ms. Vandenburgh nor her counsel ever agreed to such a provision. *Id.* at pp. 25:7-16; 67:1-24.

Again, the Magistrate not only completely ignored and overlooked these undisputed facts, the Magistrate made no mention whatsoever of them in the Recommendation. For that additional reason, the Recommendation is not only in error, it is directly contrary to the record evidence.

Each and every one of the foregoing reasons alone, or when considered together, mandate that this Court reject the Recommendation. In short, it is black letter law that there must clearly be a "meeting of the minds," including agreement upon all material terms, in order for a

settlement agreement to be enforceable. *See, e.g., Quinlan v. Stouffe*, 823 N.E.2d 597, 355 Ill.App.3d 830 (Ill. App. 2005)

*The Blacklisting Material Term Issue*

If all of the foregoing somehow did not provide this Court with a sufficient basis for rejecting the Recommendation, the "blacklist" material term issue provides it with yet another. Here, it is undisputed that a "Trespass Notice" ("Notice") was issued to the Plaintiff some years ago by Ravinia arising out of the underlying occurrence in this case. However, it is <u>undisputed</u> that the Notice did *not* indicate that Plaintiff is or will be blacklisted by Ravinia, nor did it indicate that she will be prohibited from purchasing tickets on-line or otherwise. *Id.* at pp. 34:11-35:14; *see also* Plaintiff's hearing Exhibit No. 2.

Thus, the issue of whether, and to what extent, Plaintiff will be blacklisted *still* remains to be negotiated and agreed upon by the parties. Moreover, it is <u>undisputed</u> that Plaintiff would *not* agree to any settlement/settlement agreement with Ravinia unless and until she was *not* subject to being blacklisted. *Id* at p. 25:3-16. Accordingly, it is similarly <u>undisputed</u> that Plaintiff's counsel was *not* authorized by the Plaintiff to enter into a settlement/settlement agreement unless and until Ravinia agreed that she would *not* be blacklisted. *Id.*

A further summary of the testimony on this blacklisting issue is also instructive. Here, in connection with the attorneys' attempted negotiation of a settlement/settlement agreement, Plaintiff's counsel specifically asked Ravinia's counsel whether the terms of the parties' settlement agreement would include the blacklisting of Plaintiff by Ravinia. *Id.* at p. 40:23-41:14; *see also* Plaintiff's Group Exhibit, at December 13, 2017 e-mail. Tellingly, Ravinia's

counsel did not even know whether it did or did not, or whether his client was insisting upon that as a provision of the parties' settlement agreement. *Id.; see also* pp. 29:23-30:18.

As a result, Ravinia's counsel in turn reached out to his client (i.e., Ravinia representatives, including Mr. Schmitz), to determine whether, as part of the settlement agreement, Ravinia was insisting upon the blacklisting of the Plaintiff. *Id.* at pp. 30:17-17; 41:15-47:1. It is <u>undisputed</u> that the blacklisting of the Plaintiff had never previously been discussed or negotiated between counsel for the parties prior to Ravinia's counsel tendering to Plaintiff's counsel a draft settlement agreement. *Id.* at pp. 46:6-47:1. Ravinia's representative told Ravinia's counsel that Ravinia was insisting on the blacklisting of Plaintiff such that she would be barred from ordering tickets, on-line or otherwise. *Id.* at p. 31:22:33:6.

It is <u>undisputed</u> that such a term is *not* in the draft settlement agreement filed by Ravinia with this Court. Yet, according to Ravinia, it is a significant material terms that needs to be included in the parties' agreement.

Accordingly, the parties' failure to agree upon yet another material term, i.e., the blacklisting of Plaintiff, serves as another basis for this Court to find that the Recommendation is in error because there has *not* been a meeting of the minds and there has *not* been agreement upon all of the material terms of a settlement agreement.

Finally, it is important to note that, with respect to this material blacklist issue, the Recommendation takes a one-sided approach to this issue while ignoring the other undisputed record evidence. According to the Recommendation, this issue does not matter at all because it was not raised by Plaintiff's counsel prior to the time that Ravinia's counsel tendered the draft settlement agreement. That completely misses two critical points. First, as noted above, Ravinia

admits that it is in fact a material term. Accordingly, for the Recommendation to find it is not is without basis. Second, it ignores the undisputed record evidence, further discussed below, that Plaintiff's counsel did not even have the authority to enter into a settlement agreement on behalf of the Plaintiff if she were to be blacklisted as part of the parties' settlement agreement.

    **B. The Recommendation Should Be Reject Because It Is Similarly *Undisputed* That Plaintiff's Counsel Did *Not* Have The Authority From Plaintiff, Ms. Vandenburgh, To Agree To The Terms Of The Draft Settlement/ Settlement Agreement, Beyond The Mere Monetary Amount To Be Paid By Ravinia**

Even if all of the foregoing were somehow not enough to serve as a basis for rejecting the Recommendation, this Court should still deny it because, as set forth above, it is <u>undisputed</u> - and it remains unrebutted by Ravinia - that Plaintiff's counsel did *not* have the authority or authorization from the Plaintiff, Ms. Vandenburgh, to agree to the terms of a settlement-settlement agreement beyond the mere monetary terms. *Id.* at p. 25:3-16; 66:23-68:24. Ravinia not even dispute or challenge that in any way during the evidentiary hearing, and thus did not dispute or challenge that in its post-hearing submission to the Magistrate.

Yet, the Recommendation completely ignores this undisputed fact, and does not even mention it. Instead, the Recommendation treats this as merely an *argument* being made by the Plaintiff and her counsel. It is not an argument, it is an undisputed fact. Indeed, the testimony on this point at the evidentiary hearing was as follows:

    Q.    Prior to receiving the draft settlement agreement, were you authorized by the plaintiff to accept any and all material terms of any proposed agreement?

    A.    No.

7

Q. And at the time you wrote this 10:13 email on December 13th, had you been authorized by Ms. VanDenburgh [sic] to accept any and all terms of a settlement agreement?

A. Yes. Not any and all, but yes, settle at $25,000, but it 11 would have to include at that point in time an apology from Ravinia and mutual non-disparagement, non-disclosure and release and not being blacklisted.

Q. And at the time that you responded to Mr. Bernover's email, were you authorized to accept that draft as written?

A. No.

(*See* Hearing Trans., at Dkt. 131, at Ex. 1, at p. 25)

_____

THE COURT: I do have a question of clarification for Mr. Leonard. And, Mr. Leonard, just to remind you, you are still under oath. And the question that I had was: When you received a copy of the joint -- the proposed joint motion for good faith finding and dismissal and the attached release of all claims, at the time that you forwarded the response email saying "Agreed," period, did you in fact have authority from your client to agree.

MR. LEONARD: No.

THE COURT: So when you said agreed, you didn't have the authority to agree?

MR. LEONARD: Well, I was just agreeing to the filing of the motion. I wouldn't seek her authority to file a motion, but I didn't have authority to agree to the terms of the written settlement agreement. That obviously had to be negotiated. My client had to

agree to that. But I wouldn't go to Ms. VanDenburgh and say, "Is it okay to file the motion?"

THE COURT: Did you have authority to agree to the language of the motion? The motion had language that, you know, the parties hereby, you know, submit to the Court language. So there was a document that was intended to be filed with the Court.

MR. LEONARD: Well, since I hadn't discussed the release with her, no, I didn't have authority to agree to the language of the release.

THE COURT: So when you said agreed, what did that mean then?

MR. LEONARD: File the motion.

THE COURT: But the motion was to be filed as a joint motion.

MR. LEONARD: Correct.

THE COURT: So by its very nature of the motion, it was something that you would have had to have agreed to do.

MR. LEONARD: To file the motion, but not to -- that we had agreement on the terms of a settlement. That's a whole different ballgame.

THE COURT: Did you review the language of the motion?

MR. LEONARD: Probably not.

THE COURT: But you had authority to agree to the language of the motion itself.

MR. LEONARD: Well, to the extent the language of the motion suggested we have

9

agreement on the terms of a settlement agreement, the actual material terms, no, but I would have agreement to have him file a motion.

THE COURT: So when you say agreed, what did that mean?

MR. LEONARD: He can file the motion. I assumed we would reach the terms of a settlement agreement, just like he said, subject to further negotiation.

THE COURT: All right. Thank you.

(*Id.* at pp. 67-69)

Therefore, it is undisputed - and unrebutted by Ravinia – that Plaintiff's counsel never "agreed" to the terms of the draft settlement agreement provided by Ravinia's counsel. *Id.* at pp. 18:5-17; 24:18-25:6; 66:23-68:24. All Plaintiff's counsel agreed to was the *filing* of the Motion by Ravinia's counsel - and that is all that Ravinia's counsel asked of Plaintiff's counsel. *Id.* In other words, Ravinia's counsel did not ask Plaintiff's counsel if he or his client agreed to the terms of the draft settlement agreement, he instead only asked whether he had permission to file the Motion. *Id.*

Thus, even if Plaintiff's counsel could have been more clear in his response e-mail back to Ravinia's counsel, that does not establish the meeting of the minds *of the parties*, let alone a meeting of the minds of their counsel, on all of the material terms of a settlement agreement/settlement agreement document. In fact, it is <u>undisputed</u> that the only thing that Plaintiff's counsel ever agreed to is the sum of money it would take to resolve the Plaintiff's claims against Ravinia. *Id.* at p. 39:9-21. Even then, in agreeing only to that monetary amount, Plaintiff's counsel made it clear to Ravinia's counsel that any settlement was "**obviously subject**

10

**to a suitable release/settlement agreement.**" *Id.* (emphasis added). The parties have never agreed upon all of the material terms of such an agreement.

The Recommendation attempts to address and skirt these undisputed in two ways: 1) by pointing out that a substantial period of time purportedly passed between Mr. Leonard authorizing the filing of the Motion, and when Mr. Leonard let Ravinia's counsel know that the parties still had to reach agreement upon all of the material terms of a written settlement agreement, and 2) by relying upon the concept of "apparent authority."

With respect to the first point, it is undisputed that, after authorizing the filing of the Motion only, Mr. Leonard got back to Ravinia's counsel within an extremely short period of time to let him know, re-affirm, and again emphasize that the parties' did <u>not</u> have agreement upon the terms of a written settlement agreement unless and until all material terms could be agreed upon. That time period was approximately thirty minutes. *Id.* at pp. 23-24.

With respect to the second point, there is no way that Ravinia's counsel could have then relied upon "apparent authority" to conclude that the parties had in fact agreed upon all of the material terms of a settlement agreement. In fact, just the opposite is true. It is undisputed that Ravinia's counsel went ahead and subsequent filed the Motion at issue (much later), knowing that a genuine dispute existed between the parties as to whether the parties had in fact agreed upon all of the material terms of a written settlement agreement.

Moreover, the Recommendation is flat out wrong with respect to its attempted interpretation and application of the doctrine of "apparent authority." It requires at least two elements that are wholly absent in this record: 1) a reliance upon an act or statement of the principal (here, Ms. Vandenburgh), and *not* an act or statement by the agent (here, her counsel),

and 2) reasonable reliance. *See, e.g., Smith v. State Farm*, 30 F.Supp.3d 765 (N.D. Ill. 2014). With respect that first requirement, it is undisputed that neither Ravinia nor its counsel ever interacted or communication with Ms. Vandenburgh during the settlement negotiation. Thus, as a matter law, Ravinia never relied upon any acts or statement of her, as the principal. In any event, certainly any "reliance" by Ravinia and its counsel could not have been reasonable, as a matter of law, in light of the fact that Ravinia knew, at the time that it subsequently (and much later) filed a Motion to Enforce Settlement, that a genuine dispute then existed as to whether or not the parties had reached a meeting of the minds on all of the material terms of a written settlement agreement.

For all of those additional reasons, this Court should find the Recommendation is in error, and reject it.

**WHEREFORE**, Plaintiff, Linda Vandenburgh, by and through her undersigned counsel, respectfully requests the entry of an Order rejecting the Magistrate's Recommendation, and accordingly denying Defendant, Ravinia Festival Association's Motion to Enforce Settlement Agreement in its entirety, and for such other and further relief as is appropriate under the circumstances.

                                **RESPECTFULLY SUBMITTED,**

                                By: <u>s/Michael I. Leonard</u>
                                        **Counsel for Plaintiff**

**LEONARDMEYER, LLP**

Michael I. Leonard

Madelaine Thomas

120 North LaSalle, 20th Floor

Chicago, Illinois 60602

(312)380-6659 (direct)

(312)264-0671 (fax)

## CERTIFICATE OF SERVICE

    The undersigned attorney hereby certifies that, on July 12, 2018, he served the above document to all counsel of record by ECF filing it.

                                           **/s/Michael I. Leonard**